**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3414
_____

DANIEL HEATH,
                                              Appellant
v.

SUPT. ROBERT SHANNON; JOHN KERESTES, Dept. Supt. For Facilities
Management of SCI Frackville Prison; BARBARA G. MALEWSKI, Chief Healthcare
Administrator of FCI Frackville Prison; DAVID MARTIN, P.A.; R.N. PAM
WOLFGANG; P.A. JESSICA HOCK; P.A. WYCHOCK; R.N. SANDY DAVIS; DR.
O'CONNER; P.A. SLIVKA; P.A. SINGH; P.A. MICHAEL SIMS; R.N. PATTY
WOLFE; R.N. BARBARA BRIGHT

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 4-04-cv-02275)
District Judge:  Honorable John E. Jones, III

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
August 17, 2011
Before:  SLOVITER, FISHER and WEIS, Circuit Judges

(Opinion filed: August 25, 2011)

_____

OPINION
_____

PER CURIAM.

        Daniel Heath appeals pro se from the District Court's orders granting the

defendants' motions to dismiss, their motion for judgment on the pleadings, and their motions for summary judgment. For the reasons set forth below, we will affirm in part, vacate in part, and remand to the District Court for further proceedings.

In October 2004, Heath, a state prisoner, filed a complaint alleging that he had been denied adequate medical care for "mysterious abdominal pains and other related abdominal problems." Ultimately, Heath was diagnosed with a perforated stomach ulcer and underwent emergency surgery on December 1, 2003, during which 70 percent of his stomach was removed. As a result, Heath asserts that he will be on medication and will require special dietary care for the rest of his life. He named as defendants prison officials and medical staff at the State Correctional Institution in Frackville, Pennsylvania ("SCI-Frackville").[1]

The District Court issued a series of decisions granting the defendants' motions to dismiss, their motion for judgment on the pleadings, and their motions for summary judgment. In particular, the District Court dismissed claims against a doctor who had died, held that claims which allegedly accrued before October 2002 were barred by the applicable statute of limitations, and found that Heath had failed to demonstrate that certain defendants had any personal involvement in the allegedly unconstitutional

---

[1] Specifically, Heath sued the following individuals: Superintendent Robert Shannon; Deputy Superintendent for Facilities Management John Kerestes; Health Care Administrator Barbara Malewski; Physician Assistants ("P.A.") David Martin, Jessica Hock, Michael Sims, and Don Silva; Registered Nurses ("R.N.") Pam Wolfgang, Barbara Bright, Sandy Davis, and Patty Wolfe; and Doctors Wychock, Robert O'Connor, and Singh.

conduct. To the extent that the defendants were sued in their official capacities, the District Court held that they were immune from suit under the Eleventh Amendment. With respect to claims brought pursuant to 42 U.S.C. §§ 1985 and 1986, the District Court found that none of Heath's allegations suggested that the defendants were motivated by racial or class-based discriminatory animus, or that there was an agreement by the defendants to violate his civil rights. With respect to those claims which were sufficient to proceed to the summary judgment stage, the District Court held that the facts failed to demonstrate deliberate indifference and that Heath failed to demonstrate through expert testimony that the defendants' actions caused him harm. Heath appealed.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. The Court exercises plenary review over the District Court's grant of the Defendants' motion to dismiss and motion for judgment on the pleadings. Phillips v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008); Ehrheart v. Verizon Wireless, 609 F.3d 590, 593 n.2 (3d Cir. 2010). We accept as true all of the allegations contained in the complaint and draw reasonable inferences in favor of the plaintiff. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (per curiam). To survive dismissal, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Plenary review also applies to the order granting summary judgment. DeHart v. Horn, 390 F.3d 262, 267 (3d Cir. 2004). Summary judgment is proper where, viewing the evidence in the light most favorable to the nonmoving party and drawing all

3

inferences in favor of that party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Kaucher v. Cnty. of Bucks, 455 F.3d 418, 422-23 (3d Cir. 2006).

Although the District Court properly disposed of the majority of Heath's claims, it erred in granting summary judgment in favor of P.A. Martin.

P.A. Martin

Pursuant to the Eighth Amendment's prohibition on cruel and unusual punishment, prison officials are required to provide basic medical treatment to inmates. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). In order to show a violation of the Eighth Amendment's ban on cruel and unusual punishment, a prisoner must show that prison officials were deliberately indifferent to the prisoner's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). The alleged violation must be beyond mere negligence. Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993).

On November 10, 2003, Heath sought treatment at the SCI-Frackville infirmary, and was seen by P.A. Martin. In his declaration, Heath alleged that he complained that his kidneys felt like they were on fire, that he had stomach cramps, and that he was vomiting a substance that resembled black coffee grounds. Later in his declaration, Heath claimed that there was black fluid coming out of his nose at the time of the examination. Despite these complaints, Heath asserted that P.A. Martin told him that "there is nothing wrong with you," suggested he apply a "hot compress," and advised him to purchase over-the-counter medications from the prison commissary. Heath claims

4

that he returned to his housing unit in severe pain. The Progress Notes for November 10, 2003, entered by P.A. Martin indicate that Heath complained of "kidneys on fire," vague symptoms, and "numerous disconnected complaints." The Notes also reflect that Heath had no "flank discomfort to palpation or percussion" and that a "GI evaluation" was "normal." In line with Heath's allegations, the Notes state that he was told to use "moist heat" and "OTC analgesics." Heath did not return to the infirmary with stomach related problems until December 1, 2003, the day he underwent surgery.

The District Court initially denied the motion for summary judgment filed by P.A. Martin, noting that the "parties' versions of [the November 10, 2003,] examination differ markedly." In particular, the District Court held that "[b]ecause there is no mention of the black fluid in the progress notes from Martin's examination of Heath on November 10, 2003, a credibility dispute exists as to whether Heath told and/or showed Martin that he had black fluid coming out of his nose." P.A. Martin moved for leave to file a second motion for summary judgment, which the District Court granted. In support of the renewed motion for summary judgment, P.A. Martin claimed that "Heath did not complain of abdominal pain or that he had vomited a substance which looked like black coffee beans or that this black substance was coming from his nose." Even if Heath had made those symptoms known, P.A. Martin suggested that "[t]o a reasonable medical certainty I do not believe that [Heath] would have had a different outcome if he had surgery on November 10, 2003." Ultimately, P.A. Martin "base[d] his motion for summary judgment on the complete failure of Heath to have any evidence that Martin's

5

failure to diagnose his condition on November 10, 2003 caused him any injury." This "causal relationship" theory was based on two not precedential district court cases: Walthour v. Tennis, No. 06-0086, 2009 WL 2957742 (M.D. Pa. Sept. 9, 2009), and Miszler v. Shoemaker, No. 04-1756, 2009 WL 790139 (M.D. Pa. Mar. 20, 2009).

The District Court directed Heath to file "his opposition, including opposing briefs and statements of material facts, as required by M.D. Pa. LR 56.1." Heath submitted an opposition brief, supporting exhibits, and a declaration. In the declaration, Heath again stated that he informed P.A. Martin of "a black fluid that kept coming up out of my mouth and/or nose that resembled black coffee grounds, even showed him some from my nose." Heath asserted that P.A. Martin's failure to properly treat him "caused Heath inordinate delay in obtaining diagnoses and treatment, thus prolonging his substantial pain and suffering."

The District Court granted P.A. Martin's motion for summary judgment. First, the District Court held that Heath did not comply with the local rule (LR 56.1) governing motions for summary judgment. Specifically, Heath failed to "respond directly to the numbered paragraphs" in P.A. Martin's statement of material facts and failed to "cite to the parts of the record that support his statements." Thus, the District Court "deemed admitted" all material facts set forth in P.A. Martin's statement of material facts, including his claim that Heath did not complain of abdominal pain or vomiting. In this regard, the District Court essentially dismissed the claims against P.A. Martin as a sanction for failing to comply with LR 56.1. Of course, when using dismissal

6

as a sanction, a District Court is ordinarily required to consider and balance six factors enumerated in Poulis v. State Farm Fire & Casualty Company, 747 F.2d 863, 868 (3d Cir. 1984). The District Court did not do so here.

In any event, however, Heath's complaints (or lack thereof) of specific symptoms did not figure prominently in the District Court's conclusion that P.A. Martin was entitled to judgment as a matter of law. The District Court stated:

> . . . Heath has failed to submit any expert medical evidence to contradict Martin's professional medical opinion that the medical treatment he provided was reasonable and appropriate and that he did not believe that the medical treatment that was provided to Heath presented a substantial risk of serious harm to him. Moreover, because a perforated ulcer is a "sophisticated" medical condition, and thus a causal relationship between Martin's alleged deliberate indifference and Heath's damages is not "obvious," medical expert testimony would be required to educate the jury as to whether an alternative to surgery would have existed if Heath had been diagnosed with a perforated ulcer on November 10, 2003, or if he would have had a different outcome if he had surgery on November 10 rather than December 1. Because Heath has failed to present this expert evidence to counter Martin's verification, and in fact testified at his deposition that no medical expert has indicated an interest in testifying for him in this case, Martin's medical opinion on the aforementioned issues must be deemed unopposed . . . .

We have held that a prisoner's claim of deliberate indifference to a serious medical need requires expert testimony when the seriousness of the injury or illness would not be apparent to a lay person. Boring v. Kozakiewicz, 833 F.2d 468, 473-74 (3d Cir. 1987) (concluding that jury would not be in a position to decide whether ulnar nerve injury, scalp condition, knee disorder, and migraine headaches could be classified as

7

"serious"). Here, however, the District Court repeatedly stated that Heath's perforated stomach ulcer constituted a serious medical need as required under Estelle. (Dist. Ct. Doc. Nos. 46, p. 10-11; 87, p. 10; 116, p. 7; 134, p. 16). Even without hindsight into Heath's underlying condition, there are genuine issues of fact concerning whether Heath informed P.A. Martin about the black fluid coming from his nose and, if so, whether P.A. Martin's lack of treatment caused an injury to Heath. In this connection, the District Court erred by effectively crediting the "professional medical opinion" of P.A. Martin, a Physician Assistant who has a stake in the outcome of the case. Notably, P.A. Martin's declaration provides no basis for his conclusion that Heath "would [not] have had a different outcome if he had surgery on November 10, 2003." Furthermore, the District Court relied on Heath's statement -- made at a deposition taken in August 2007 -- that he was unable to locate an expert to testify at trial, without providing Heath with a further opportunity to designate an expert to support his claim. Cf. Fed. R. Civ. P. 56(f) (2009) (concerning availability of affidavits in summary judgment proceedings); 26(a)(2) (regarding disclosure of expert testimony). Accordingly, we will vacate that portion of the District Court's order, entered on July 30, 2010, which granted summary judgment in favor of P.A. Martin.

P.A. Hock and R.N. Wolfgang

We conclude, however, that the District Court properly granted summary judgment in favor of P.A. Hock and R.N. Wolfgang. P.A. Hock treated Heath on January 8, 2003, when he visited the SCI-Frackville infirmary complaining of an upset stomach

8

and noting that he had not had a bowel movement in three to four days. P.A. Hock wrote in the Progress Notes that Heath's abdomen was "soft" and "nontender," but not distended, and that there were no masses. Concluding that Heath was constipated, Heath was given 30 cubic centimeters of milk of magnesia and was prescribed Colace. Heath stated in his declaration that he did not actually receive the Colace.

R.N. Wolfgang treated Heath on December 1, 2003. On that date, Heath began experiencing severe stomach pains and started vomiting around 2:45 a.m. He requested medical care, and R.N. Wolfgang arrived at Heath's cell. According to Heath, R.N. Wolfgang and the guards "just stood around [him] talking amongst themselves" for 10 to 15 minutes. Heath was then handcuffed and "made to walk, practically crawl, along the tier and down a flight of stairs to an awaiting wheelchair." Once he arrived in the prison emergency room, Heath "was made to lie on a hard examination table, still hand-cuffed, for nearly five (5) hours, until arrangements were made to have him transported out of the prison." According to a security logbook, Heath notified guards that he "needed to be seen by medical for stomach pains" at 4:20 a.m., and was transported to the prison ER approximately 20 minutes later. The Housing Unit A Log indicates that a nurse arrived to see Heath at 4:15 a.m. In her declaration, R.N. Wolfgang stated that she took Heath's vital signs and felt his abdomen. R.N. Wolfgang was ordered by a doctor to keep Heath in the infirmary until another doctor arrived later in the morning and to administer a pain medication, which she did at 5:00 a.m. Before her shift ended at 6:00 a.m., R.N. Wolfgang took Heath's vital signs again, performed an

9

Electrocardiogram, and submitted a report on Heath's status. Later that morning, Heath was transported to SCI-Mahoney, where a member of the prison medical staff ordered that he be taken to the hospital.

These facts fail to indicate that P.A. Hock and R.N. Wolfgang acted with deliberate indifference.[2] Both defendants examined Heath upon his request and responded promptly to his complaints. Although Heath would have preferred a different course of treatment, his dissatisfaction does not establish a cause of action. Inmates of Allegheny Jail v. Pierce, 612 F. 2d 754, 762 (3d Cir. 1979) (courts will "disavow any attempt to second- guess the propriety or adequacy of a particular course of treatment . . . (which) remains a question of sound professional judgment." (citations omitted)).

Remaining Defendants and Claims

Heath first reported gastrointestinal problems to the staff at the infirmary at SCI-Frackville in April 1995. He raised similar complaints three additional times in 1995, and once in 1996. According to Heath, he was "simply given Maalox, Milk of Magnesia, or no treatment at all . . . ." Heath did not return to the infirmary for treatment of stomach pains until January 8, 2003. Claims brought pursuant to 42 U.S.C. § 1983 are subject to the state statute of limitations for personal injury actions. See Wilson v.

---

[2] The District Court initially denied R.N. Wolfgang's motion for summary judgment, holding that Heath "has adduced evidence from which a reasonable jury could infer that Wolfgang was aware of the need to provide medical attention and intentionally failed to do so . . . ." As with P.A. Martin, R.N. Wolfgang was permitted to submit another motion for summary judgment. In her renewed motion, R.N. Wolfgang again relied on her declaration and Heath's medical chart, but she also provided log books confirming the timing of events.

10

Garcia, 471 U.S. 261, 266-67 (1985).  The statute of limitations for personal injury actions in Pennsylvania is two years.  See 42 Pa. Cons. Stat. Ann. § 5524.  Heath filed his complaint in October 2004.  Accordingly, the District Court properly held that the claims arising out Heath's efforts to obtain treatment in the 1990s are time-barred.  Heath has not established a basis for equitably tolling the limitations period, Santos ex rel. Beato v. United States, 559 F.3d 189, 197 (3d Cir. 2009), and his "continuing violation" theory fails because the alleged incidents of improper medical care in 1995 and 1996 are individually actionable and bear no connection to the treatment he received starting in 2003.  O'Connor v. City of Newark, 440 F.3d 125, 128 (3d Cir. 2006).

In addition, the District Court properly dismissed those defendants who had no personal involvement in the alleged denial of Heath's constitutional rights.  We have consistently held that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior."  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Heath has not claimed that Doctors Wychock and O'Connor, and Physician Assistants Silva and Sims, were personally involved in the medical treatment which forms the basis of his complaint.  Likewise, Superintendent Shannon, Deputy Superintendent Kerestes, and Health Care Administrator Malewski appear to have been named solely on the basis of their supervisory positions.  Indeed, Heath claimed only that these defendants "failed to train, supervise and/or control" their subordinates.  Thus, the claims brought against these defendants also fail.  Durmer, 991 F. 2d at 69 n. 14 (holding that liability under

11

§ 1983 may not be based on the doctrine of respondeat superior).

The District Court also properly dismissed the claims brought against the prison officials, to the extent that they were sued in their official capacities. <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 71 (1989). Furthermore, we will affirm the District Court's dismissal of Heath's conspiracy claims. Although Heath sought to raise a claim under § 1985 in his complaint, he failed to allege any fact from which one could infer an agreement or understanding among the defendants to violate his constitutional rights, or to discriminate against him on account of his race. Because Heath failed to state a conspiracy claim under § 1985, the District Court properly ruled that his related § 1986 claims also failed. <u>Rogin v. Bensalem Twp.</u>, 616 F.2d 680, 696 (3d Cir. 1980). We also reject Heath's arguments that the District Court abused its discretion by denying his requests for appointment of counsel, <u>Tabron v. Grace</u>, 6 F.3d 147, 155-56 (3d Cir. 1993), and by granting certain defendants leave to file a second motion for summary judgment out of time, <u>In re Fine Paper Antitrust Litig.</u>, 685 F.2d 810, 817 (3d Cir. 1982). Finally, contrary to Heath's assertion, we conclude that the District Court was not obligated to afford Heath an opportunity to file an amended complaint. <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 108 (3d Cir. 2002) (holding that district courts need not extend plaintiffs an opportunity to amend before dismissing a complaint, where amendment would be inequitable or futile).

For the foregoing reasons we will affirm in part, vacate in part, and remand the matter to the District Court for further proceedings consistent with this opinion. In

12

particular, we will vacate that portion of the District Court's July 30, 2010, which granted

summary judgment in favor of P.A. Martin.