IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

MILLARD E. PRICE,                        )
                                         )
            Plaintiff,                    )
                                         )
      v.                                  )   C.A. No. N21C-05-160 FWW
                                         )
CENTURION OF DELAWARE, LLC,               )
CHRISTINE CLAUDIO, ANDREW                 )
ABRAHAMSON, JASKIR KAUR and               )
AMEGBO TAFFA,                             )
                                         )
            Defendants.                   )

Submitted: October 31, 2022
Decided: November 15, 2022
*Corrected:  December 5, 2022

*Upon Defendants' Motion for Summary Judgment*
**GRANTED.**

Millard E. Price, SBI No. 441452, Howard R. Young Correctional Institution, P.O. Box 9561, Wilmington, DE 19809, *pro se.*

Scott G. Wilcox, Esquire, MOORE & RUTT, P.A., The Mill, 1007 North Orange Street, Suite 437, Wilmington, DE 19801, Wilmington, Delaware 19801, Attorney for Defendants.

**WHARTON, J.**

*Corrected spelling of Defendant Amegbo Taffa's name.

This 15th day of November, 2022, upon consideration the Motion for Summary Judgment[1] ("Motion") of Defendants Centurion of Delaware, LLC ("Centurion"), Christine Claudio ("Claudio"), Andrew Abrahamson ("Abrahamson"), Jaskir Kaur ("Kaur"), and Amegbo Taffa ("Taffa") (collectively "Defendants"), Plaintiff Millard E. Price's ("Price") Answer to Defendants' Motion for Summary Judgment,[2] and the record in this matter, it appears to the Court:

1.     In his *pro se* Complaint Price alleges two claims for relief – Deliberate Indifference and Reckless and Emotional Infliction of Pain and Emotional Distress.[3] A third claim of Negligence and Malpractice was dismissed by the Court upon initial review for lack of the required affidavit of merit.[4] The claims are based on alleged mistreatment of Price by the individual defendants as employees of Centurion of Delaware, LLC ("Centurion"), a health care provider which provides services to inmates at correctional facilities such as the one where Price is incarcerated.[5]

2.     It appears from his Complaint that Price has undergone two spinal surgeries, the second of which was performed on June 29, 2020 by neurosurgeon Tim [sic] Boulos, M.D. through prison medical provider Centurion.[6] Post-surgery, Price was prescribed

---

[1] Defs.' Op. Br. in Support of Mot. for Summ. J., D.I. 110.
[2] Pl.'s Answer to Defs.' Mot. for Summ. J., D.I. 112., D.I. 26.
[3] Compl., D.I. 1.
[4] D.I. 5.
[5] Compl., D.I. 1.
[6] *Id.,* at ⁋ 11.

Tramadol for pain, but was discontinued after approximately six months.[7] When Price complained, Tramadol was renewed, but only at half strength.[8] What followed was a series of administrative grievances filed by Price, along with 31 sick call requests due to pain, and meetings with the individual defendants including a meeting with non-party Dr. Boulos.[9] According to the Complaint, none of the foregoing resulted in a resumption of his Tramadol prescription or a referral to a pain management specialist.[10]

3.      The remaining counts of the Complaint are Count 1 – "Deliberate Indifference" and Count 2 – "Reckless and Emotional Infliction of Pain and Emotional Duress." Count 1 alleges that the Defendants have "treated Plaintiff with deliberate indifference to his pain stemming from a serious medical condition and thereby failed to provide him with adequate medical care as mandated by Delaware Statutory Law and the Delaware and U.S. Constitutions.[11] Count 2 alleges that "Defendants have subjected Plaintiff to reckless and intentional infliction of physical pain and emotional duress, an intentional tort, by the gross and outrageous misconduct of refusing to prescribe pain medication for a serious medical condition."[12] He seeks "general, compensatory, special, and punitive damages, Court costs, post-judgment interest, pre-judgment interest, and such reasonable attorney fees should

---

[7] *Id.,* at ¶ 13.
[8] *Id.*
[9] *Id.,* at ¶¶ 14-27.
[10] *Id.,* at ¶ 26.
[11] *Id.,* at ¶ 29.
[12] *Id.,* at ¶ 32.

Plaintiff elect to solicit an attorney…"[13]

4.      The Defendants make three arguments in support of summary judgment. First, as to Count 1, Price cannot demonstrate deliberate indifference to support his claim of an Eighth Amendment violation against the individual defendants.[14]   Further, there is no evidence that Defendant Centurion of Delaware, LLC ("Centurion") adopted a policy or procedure that caused Price's Eighth Amendment claims.[15]   As to Count 2, there is no evidence that the Defendants' treatment of Price's medical conditions was extreme or outrageous.[16]

5.      Specifically, as to Count 1, the individual defendants maintain they were not deliberately indifferent to Price's medical condition, specifically his pain symptoms, when they declined to continue prescribing Tramadol at the levels he requested.  In fact, Price's medical records show that they saw him continually after his second surgery and treated him reasonably for his pain.[17]   The individual defendants' concern in continuing Price on Tramadol was that long term use of that narcotic drug can cause harm to the kidneys, and Price's elevated creatinine levels demonstrated acute kidney injury.[18]  Their plan was to wean Price off of narcotics gradually and to prescribe medications which were less harmful to his

---

[13] *Id.,* at 19.
[14] Defs.' Op. Br., at 5-8, D.I. 110.
[15] *Id.,* at 8-10.
[16] *Id.,* at 10-12.
[17] *Id.,* at 6-8.
[18] *Id.,* at 7.

4

kidneys directed to his areas of pain.[19] Moreover, the individual defendants, citing Third Circuit precedent, argue that Price cannot meet his burden so show that he has a serious medical need in the absence of expert medical testimony.[20] The corporate defendant, Centurion, contends that settled law precludes it from being held liable for the constitutional violations of its employees under a *respondeat superior* or vicarious liability theories unless those violations were the result of a policy or custom, where that practice reasonably can be said to amount to deliberate indifference to the plaintiff's serious medical need.[21] Here, Price has identified no such policy or custom.[22]

6.      Turning to Count 2, the Defendants argue that Price has not met his burden of producing evidence to establish extreme and outrageous conduct which intentionally caused him severe emotional distress.[23] Rather, the record only supports the conclusion that the care Price was provided was anything but extreme and outrageous.[24]

7.      Price opposes the Motion and has submitted his own affidavit in support of his opposition.[25] As to Count 1, he contends that his two back surgeries and the prospect of a third constitute a sufficiently serious medical condition to warrant Eighth Amendment

---

[19] *Id.*
[20] *Id.,* at 6, (citing *Heath v. Shannon*, 442 Fed. Appx. 712, 716 (3d. Cir. Aug. 25, 2011)(citing *Boring v. Kozakiewicz*, 833 F. 468, 473 (3d. Cir. 1987)).
[21] *Id.,* at 8-9.
[22] *Id.,* at 9.
[23] *Id.,* at 10-11.
[24] *Id.,* at 11.
[25] Pl.'s Ans. to Defs.' Mot. for Summ. J., D. I. 112.

protections.[26]  Further, whether the Defendants had the requisite mental state for an Eighth Amendment violation – deliberate indifference – is a genuine issue of material fact not susceptible to a determination on summary judgment.[27]  With regard to Centurion, Price argues that it, along with the Department of Corrections ("DOC"), are jointly tasked with developing policies in compliance with the "National Correctional Association (NCCHA), ACA and Bureau of Prisons (BOP), and all state and federal laws."[28]  According to Price, this policy, known as the "Pain Management Initiative," was introduced at Howard R. Young Correctional Institution pursuant to DOC Policy No. A-02 and implemented by Health Services Administrator, Defendant Claudio.[29]  The policy eschews banning opioids – they should be considered with caution after weighing other treatment options.[30]  He alleges that, despite the absence of a ban on opioids, Centurion has a practice of systematically refusing to prescribe them to treat chronic pain and other health issues without regard to a patient's individualized needs.[31]

8.      Regarding Count 2, he states that Defendant Taffa "made an extreme and outrageous racial comment in the administration of his duties as a health care provider" and "made outrageous conclusory statements that plaintiff suffers 'acute kidney injury' which is

---

[26] *Id.,* at 2.
[27] *Id.*
[28] *Id.,* at 4.
[29] *Id.*
[30] *Id.,* at 4-5.
[31] *Id.,* at 5.

totally contradicted by laboratory tests…" for the sole purpose of denying him pain relief.[32] In sum, he argues that he has provided evidence through exhibits attached to his Answer to the Motion that demonstrate: (1) many medical experts consider his condition a serious one requiring treatment; (2) Defendants, who are not experts, caused excessive delays in his treatment and circumvented treatment recommended by the Pain Management Initiative; and (3) he has been suffering for two years due to the Defendants' policy of non-compliance with the Pain Management Initiative.[33]

9.      Superior Court Civil Rule 56 provides that summary judgment is appropriate when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[34] The moving party initially bears the burden of demonstrating that the undisputed facts support its claims or defenses.[35] If the moving party meets its burden, the burden shifts to the non-moving party to show that there are material issues of fact to be resolved by the ultimate fact-finder.[36] When considering a motion for summary judgment, the Court's function is to examine the record, including "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," in the light most favorable to the non-moving party to determine whether genuine issues

---

[32] *Id.*

[33] *Id.*

[34] Super. Ct. Civ. R. 56(c); *Buckley v. State Farm Mut. Auto. Ins. Co.*, 139 A.3d 845, 847 (Del. Super. Ct. 2015), aff'd, 140 A.3d 431 (Del. 2016) (quoting *Moore v. Sizemore*, 405 A.2d 679, 680 (Del.1979).

[35] *Sizemore*, 405 A.2d at 681.

[36] *Brzoska v. Olson*, 668 A.2d 1355, 1364 (Del. 1995).

of material fact exist "but not to decide such issues."[37]    Summary judgment will only be appropriate if the Court finds there is no genuine issue of material fact.  When material facts are in dispute, or "it seems desirable to inquire more thoroughly into the facts, to clarify the application of the law to the circumstances," summary judgment will not be appropriate."[38] However, when the facts permit a reasonable person to draw but one inference, the question becomes one for decision as a matter of law.[39]

10.    In *Estelle v. Gamble* the United States Supreme Court held that the Eighth Amendment to the United States Constitution's ban on cruel and unusual punishment requires state prison officials to provide inmates with adequate medical care.[40]  "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment."[41]  In order to establish a violation of that ban related to medical care, an inmate plaintiff must establish; (1) a serious medical need; and (2) acts or omissions by prison officials that show a deliberate indifference to that need.[42]  The Delaware Supreme Court explained in *Johnson v. Connections Community Support Programs, Inc.* that "a medical need is sufficiently serious if a physician has diagnosed it as requiring treatment or if it is one that is so obvious that a layperson could

---

[37] Super. Ct. Civ. R. 56(c); *Merrill v. Crothall-Am., Inc.*, 606 A.2d 96, 99-100 (Del. 1992).
[38] *Ebersole v. Lowengrub*, 180 A.2d 467, 468-60, (Del. 1962) (citing *Knapp v. Kinsey*, 249 F.2d 797 (6th Cir. 1957)).
[39] *Wooten v. Kiger*, 226 A.2d 238, 239 (Del. 1967).
[40] 429 U.S. 97, 103-105 (1976); *Farmer v. Brennan,* 511 U.S. 825 (1994).
[41] *Estelle*, at 104.
[42] *Id.*

easily recognize the need for a physician's attention."[43] Deliberate indifference occurs when a state actor knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm.[44]

11.     Here, Price maintains that the seriousness of his medical need is manifest due to his two surgeries and the prospect of a third.  But, that argument misidentifies Price's medical need.  It is not Price's surgical needs to which he claims Defendants were deliberately indifferent that are at issue here.  It is his pain management needs.  Relying on *Heath v. Shannon*,[45] Defendants contend that Price must present expert testimony to meet his burden under *Estelle* to establish a serious medical need.  The Court disagrees.  Consistent with *Johnson*, Price had already been diagnosed by a physician as needing pain management treatment.[46]

12.     The Court turns next to the question of whether there is a genuine issue of material fact as to whether the Defendants were deliberately indifferent to Price's medical need.  Before doing so, however, it is important to recognize that a disagreement about the appropriate treatment for a medical need is not the same thing as deliberate indifference to it, even if that treatment later proves not to have been the better option.  Nor is medical

---

[43] 2018 WL 50443331, at *2 (Del. Oct. 16, 2018) (citing *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro,* 834 F.2d 326 (3d. Cir. 1987).
[44] *Farmer v. Brennan*, at 837.
[45] 442 Fed.Appx., 712, 714 (3d. Cir. 2011) (citing *Boring v. Kozakiewicz,* 833 F.2d 468, 473 (3d. Cir. 1987).
[46] *See, Johnson,* at *2.

negligence necessarily deliberate indifference to a patient's medical needs. The United States District Court for the District of Delaware has recognized in *Blackston v. Correctional Medical Services, Inc.* that:

> An inmate's claims against members of a prison medical department are not viable under § 1983 where the inmate receives continuing care but believes that more should be done by way of diagnosis and treatment and maintains that options available to medical personnel were not pursued on the inmate's behalf.[47]

13.     Price maintains that the deliberate indifference element of his Eighth Amendment claim implicates the Defendants' culpable state of mind and, thus, is inherently subjective and incapable of resolution by summary judgment.[48]  The Court disagrees.  The record before the Court includes Prices' medical records.  Those records detail the actions taken by the Defendants in response to Price's pain complaints.  They allow the Court to determine objectively whether a genuine issue of material fact exists as to whether the Defendants were deliberately indifferent to Price's medical needs.

14.     The dispute here centers on the Defendants' refusal to prescribe Tramadol at the strength Price desired.  As described by Defendant P.A. Taffa in the sick call notes from January 5, 2021:

> Patient is seen today in the office as he has been unhappy with his pain medication regimen.  Patient has been getting Tramadol 100 mg BID for the longest (months , even prior to surgery), and now 6 months post op he still wants high dose of Tramadol.  The

---

[47] 499 F.Supp. 2d 601, 605 (D. Del. 2007).
[48] Pl.'s Ans. to Defs.' Mot. for Summ. J., at 2, D.I. 112.

plan is to wean patient off narcotics gradually so his Tramadol dose has been lowered from 100 mg to 50 mg BID. Patient reports that pain is more manageable now but he still experiences numbness and tingling mainly in left lower extremity. I explained to patient that we need to check labs first to assess his kidney function as chronic Tramadol use is harmful for the kidneys, but patient insists on me increasing Tramadol dose. Most recent labs from June 2020 with Creatinene of 1.23 (acute kidney injury) – which even justifies cautious use of Tramadol in this patient.[49]

On January 25, 2021, Price was seen by Defendant Dr. Abrahamson.[50] During that visit, Dr. Abrahamson discussed with Price "how tramadol and narcotics are more used for acute issues, such as an acute injury or perioperatively" and "how Tylenol <3gm/day would be safe for his kidney in someone who is already on HCTZ and lisinopril with a creat >1.2 and should not be harmful for his liver."[51] Dr. Abrahamson submitted a memorandum requesting that price be given a bottom bunk and that his use of stairs be minimized.[52] On February 8, 2021, when Price reported that his symptoms had not improved with Tylenol, Dr. Abrahamson restarted him on Tramadol at the lower dosage of 50 mg in addition to Tylenol.[53] Price was seen again on February 22, 2021 by Defendant N.P Kaur.[54] As a result of that visit, Price was referred for physical therapy and would be referred for pain

---

[49] Pl.'s Ans. to Defs.' Mot. for Summ. J., at Ex. G, D.I. 112.
[50] *Id*., at Ex. I.
[51] *Id.*
[52] Defs.' Op. Br. in Support of Mot. for Summ. J., at Ex. A., D.I. 110.
[53] Pl.'s Ans. to Defs.' Mot. for Summ., D.I. 112.
[54] *Id.,* at Ex. J.

management if there was no improvement in his pain level.[55]   Defendant N.P. Kaur discussed the risks and benefits of Tramadol with Price who refused to taper his current dosage.[56]  Price also was encouraged to continue his weight loss and exercise.[57]  Ultimately, Price was sent to Uday Uthaman, M.D. a pain management specialist, on June 28, 2021.[58]

15.    The facts do not present a genuine issue as to whether the Defendants were deliberately indifferent to Price's medical needs.  They were not.  The record establishes that the Defendants provided Price with consistent medical care, the basis for which they explained to him repeatedly.  Price strongly disagrees with the Defendants' decision to wean him off of the narcotic Tramadol.[59]  He also believes that the Defendants were medically negligent in the course of treatment they followed for him.[60]  But, Price "has no right to choose a specific form of medical treatment, so long as the treatment is reasonable."[61]  The reasonableness of the treatment provided to Price is an issue that can be raised only through expert medical testimony.  Such testimony is absent here. Because here was no Eighth Amendment violation on the part of the individual defendants, there can be no derivative

---

[55] *Id.*

[56] *Id.*

[57] *Id.*

[58] *Id.,* at Ex. N.

[59] Price disputes that his creatinine levels were high enough to warrant concern that he was at risk of kidney damage. Ans. to Defs.' Mot. for Summ. J. at 2 (citing Ex. H).  Whether they were or were not may be relevant to the propriety of Price's treatment, but it not evidence of intentional disregard of his medical needs.

[60] *See,* Complaint, Count 3, Negligence and Malpractice, D.I.  Dismissed for lack of an Affidavit of Merit, D.I. 5.

[61] *Blackston,* at 605.

violation by Centurion on a theory of either *respondeat superior* or vicarious liability. Accordingly, Defendants' Motion for Summary Judgment as to Count 1 is **GRANTED.**

16.     In order to establish a claim for intentional infliction of emotional distress, a plaintiff must establish that a defendant "by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another."[62]  If bodily harm results from the conduct, the defendant is liable for that as well.[63]  "Extreme and outrageous conduct is that which "exceeds the bounds of decency and is regarded as intolerable in a civilized community."[64]  Here, Price has not produced competent expert medical testimony that the care provided him was unreasonable, much less that it "exceeds the bounds of decency and is regarded as intolerable in a civilized community."  The Motion for Summary Judgment is **GRANTED** as to Count 2.

**THEREFORE,** the Motion for Summary Judgment of Defendants Centurion of Delaware, LLC, Christine Claudio, Andrew Abrahamson, Jaskir Kaur, and Amegbo Taffa is **GRANTED.**

**IT IS SO ORDERED.**

/s/ *Ferris W. Wharton*
Ferris W. Wharton, J.

---

[74] *Spence v. Cherian,* 135 A. 3d 1282, 1288, 89 (Del. Super. Ct. 2016) (quoting the Restatement (Second) of Torts, § 46).
[63] *Fanean v. Rite Aid Corp. of Delaware*, 984 A. 2d 812, 818 (Del. Super. Ct. 2007).
[64] *Thomas v. Hartford Mut. Ins. Co.*, 2004 WL 1102362, at *3 (Del. Super. CT. Apr. 7, 2004).