IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR KENT COUNTY

STEPHANIE BUCKLEY,                  :
                                    :       C. A. No. K14C-03-028 JJC
            Plaintiff,              :
                                    :
      v.                            :
                                    :
STATE FARM MUTUAL                   :
AUTOMOBILE INSURANCE :
COMPANY,                            :
                                    :
            Defendant.              :

**Submitted: July 8, 2015**
**Decided: July 27, 2015**

**OPINION**

**Upon Defendant State Farm Mutual Insurance Company's Motion for
Summary Judgment**

Michael J. Malkiewicz, Esquire of Barros McNamara Malkiewicz & Taylor,
Dover Delaware; attorneys for the Plaintiff.

Colin M. Shalk, Esquire of Casarino Christman Shalk Ransom & Doss,
Wilmington, Delaware, attorneys for the Defendant.

CLARK, J.

**I. INTRODUCTION**

Before the Court is a suit for Personal Injury Protection ("PIP") benefits for

1

medical expenses incurred by a minor struck by a car while crossing the road to board a school bus. Plaintiff Stephanie Buckley ("Plaintiff") seeks PIP benefits from the school bus's PIP policy even though Plaintiff was not physically within the bus at the time of the accident. In a case of first impression, the Court finds that based upon the uncontroverted facts in this case, a student in the process of crossing the road to board a school bus, at the direction of the driver via intercom while the bus's red stop lamps and stop arm are activated, is entitled to PIP benefits from the automobile policy insuring the school bus. Accordingly, Defendant State Farm Mutual Automobile Company's (Defendant's) Motion for Summary Judgment is **DENIED**.

## II. FACTS AND PROCEDURAL HISTORY

The operative facts are not in dispute. On March 27, 2012, 16 year old Plaintiff Stephanie Buckley ("Plaintiff") was struck on Westville Road by a motor vehicle operated by Norman Anderson ("Anderson"). At the time Plaintiff was struck by Anderson's vehicle, she was crossing the street to board a Bumble Bee Transportation bus insured by the Defendant, State Farm Mutual Automobile Insurance Company ("Defendant").

Just before the incident, the bus approached the Plaintiff's driveway, traveling in the eastbound lane. As the bus approached, the driver activated the amber lights

2

and slowed to a stop. At that point, the bus's red stop lamps activated and the stop sign arm extended. The entrance to the bus faced the sidewalk of the eastbound side of the roadway, on the opposite side of the Plaintiff's driveway. Plaintiff then exited her home, and began walking down the driveway toward the road. Prior to the Plaintiff's entering the roadway, the bus driver, via the bus's intercom, directed the Plaintiff to cross the westbound lane and board the bus. At that point, the Plaintiff began walking across the westbound lane. Just before reaching the halfway point near the double yellow center divide, a westbound motor vehicle operated by Anderson struck the Plaintiff causing her injury.

At the time of the aforementioned incident, State Farm Mutual Automobile Insurance Company insured the bus. Its policy included $100,000 in PIP limits. The No-Fault Coverage section of the State Farm policy reads in relevant part: **"Insured** means: 1. Any person while occupying … your car …" Pursuant to the policy, "**Occupying** means in, on, entering, or exiting."

Plaintiff claimed PIP medical benefits from State Farm in the amount of $75,423.60 for treatment of her injuries. State Farm denied payment of these claimed benefits. Thereafter, Plaintiff filed a PIP suit. Before the Court is Defendant's Motion for Summary Judgment, which contends that Plaintiff is not entitled to the aforementioned PIP coverage because she was not an occupant of the bus at the time

3

she was struck by a motorist, nor was she a person injured in an accident involving such motor vehicle.

## III. STANDARD OF REVIEW

Summary judgment is appropriate if, when viewing the facts in the light most favorable to the non-moving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[1] In doing so, the Court must accept all undisputed factual assertions and accept the non-movant's version of any disputed facts.[2] When the facts of record "permit a reasonable person to draw only one inference, the question becomes one for decision as a matter of law."[3]

## IV. DISCUSSION

A.    **21 *Del. C.* § 2118(a)(2)c's  Analytical Framework**

The Delaware General Assembly enacted provisions requiring owners of

---

[1] Super. Ct. Civ. R. 56(c); *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979).

[2] *Sztybel v. Walgreen Co.*, 2011 WL 2623930, at *2 (Del. Super. June 29, 2011).

[3] *Friel v. Hartford Fire Ins. Co.*, 2014 WL 1813293, at *2 (Del. Super. May 6, 2014) *aff'd Friel v. Hartford Fire Ins. Co.*, 108 A.3d 1225 (Del. 2015) (citing *Wootten v. Kiger*, 226 A.2d 238, 239 (Del.1967)).

Delaware registered motor vehicles to obtain minimum insurance coverage.[4] One of these coverages includes Personal Injury Protection ("PIP") coverage.[5] The legislative intent of Delaware's PIP statute is "to impose on the no-fault carrier … not only primary but ultimate liability for the [injured party's] covered medical bills to the extent of [the carrier's] unexpended PIP benefits.[6] Pursuant to the operative statute, PIP

> coverage ... shall be applicable to each person occupying such motor vehicle and to any other person injured in an accident involving such motor vehicle, other than an occupant of another motor vehicle.[7]

Under section 2118(a)(2)c of Title 21, Delaware Code, whether a claimant is eligible for PIP benefits is a question of statutory interpretation.[8] Furthermore, the Superior Court's interpretation of an insurance policy is a matter of law.[9] When interpreting a statute, the Court must attempt to determine and give effect to the

---

[4] 21 *Del. C*. § 2118.

[5] 21 *Del. C*. § 2118(a)(2).

[6] *International Underwriters, Inc. v. Blue Cross & Blue Shield of Del. Inc.,* 449 A.2d 197, 200 (Del. 1982).

[7] 21 *Del. C*. § 2118(a)(2)c.

[8] *Kelty v. State Farm Mut. Auto. Ins. Co.*, 73 A.3d 926, 929 (Del. 2013).

[9] *Id.*

General Assembly's intent.[10]

In delineating the scope of PIP coverage, the Delaware Supreme Court has adopted a liberal construction of the term "occupant."[11]    Two Delaware Supreme Court cases, *Fisher and Kelty*, combine to establish the criteria necessary to evaluate the compensability of a PIP claim for injuries suffered by the claimant in this matter.

In *Friel v. Hartford Fire Ins. Co.*– which was recently affirmed by the Delaware Supreme Court[12]– this Court interpreted "the language in Section 2118(a)(2)c... to require that both occupants and non-occupants be 'injured in an accident involving a motor vehicle.'"[13] As held in *Friel*, the separate standards outlined in *Fisher* and *Kelty* must be met in the aggregate in order to support a claim for PIP benefits. Accordingly, to determine whether a claimant is eligible for PIP benefits, "the correct analysis should be: first, use the disjunctive two-prong *Fisher* test to determine whether the plaintiff is an occupant; **and second**, use the two-prong *Kelty* test to determine whether the accident involved a motor vehicle."[14]

---

[10]  *National Union Fire Ins. Co. of Pittsburgh v. Fisher*, 692 A.2d 892, 895-96 (Del. 1997).

[11]  *Id.* at 896.

[12]  *Friel,* 108 A.3d 1225 (Del. 2015).

[13]  *Friel*, 2014 WL 1813293, at *5.

[14]  *Id.* (emphasis added). (The Superior Court supported its interpretation with a number of cases where a claimant was ineligible for PIP coverage despite clearly qualifying as an

In its Answering Brief in opposition to this motion, the Plaintiff argued that finding occupancy alone pursuant to a *Fisher* generated analysis is sufficient, in itself, to trigger PIP eligibility under section 2118(a)(2)c. Plaintiff relies on a plain reading of the statute that Plaintiff asserts requires all occupants of a motor vehicle to be covered by PIP, regardless of whether the person was injured in an accident **involving the motor vehicle**. Plaintiff's argument is not wholly without merit. A reasonable reading of 21 *Del. C.*§2118 (a)(2)c could mandate an either-or analysis (*i.e.* requiring either (1) "occupancy"; or separately (2) that "any other person" be injured in an accident "involving such motor vehicle.") In response, Defendant correctly asserts that this issue was squarely before this Court in *Friel v. Hartford Fire Ins. Co.* There, this Court determined that occupancy alone was not enough. The *Friel* decision required the finding of a use related nexus to the vehicle's operation before mandating PIP coverage under such vehicle's policy. On appeal, the Delaware Supreme Court affirmed the *Friel* decision in a one page Order "on the basis of and for the reasons assigned by the Superior Court."[15] As such, this Court is constrained by the analytical framework outlined in *Friel* and will apply it below.

---

"occupant." *See e.g.*,*Wagner v. State Farm Mut. Auto. Ins. Co., 2001 WL 34083818*, at *2 (Del. Super. Oct. 25, 2001); *South v. State Farm Mut. Auto. Ins. Co.*, 2012 WL 5509623, at *2 (Del. Super. Sept. 28, 2012)).

[15] *Friel v. Hartford Fire Ins. Co.,* 108 A.3d 1225 (Del. 2015).

7

## B.    Occupancy Requirement Pursuant to *Fisher*

The occupancy test at issue was outlined by the Delaware Supreme Court in *Nat'l Union Fire Ins. Co. of Pittsburgh v. Fisher*.[16] Under this test, this Court must utilize a disjunctive two prong test whereby a claimant will be considered an occupant of a vehicle "if he or she is either: (a) within a reasonable geographic perimeter of the vehicle, **or** (b) engaged in a task related to the operation of the vehicle."[17] In assessing a reasonable geographic perimeter, "the claimant must be in, entering, exiting, touching **or** within reach of the covered vehicle."[18] Under the task related to the operation of the vehicle, courts must "carefully distinguish between job-related tasks for which one's vehicle is an integral tool and tasks directly related to the operation of one's vehicle."[19] Only tasks that are directly related to the operation of the vehicle will suffice under the second prong of the *Fisher* analysis.[20]

Turning to this case, the Plaintiff independently satisfies both prongs of the *Fisher* test, though satisfying only one aspect is necessary. The parties agree that just

---

[16] 692 A.2d at 897-98.

[17] *Id*. at 896 (emphasis added).

[18] *Id*. at 897 (holding that the "geographic perimeter test should be a clear, bright-line test (absent further legislative or contractual exposition) and should not involve a nexus component.")(emphasis added).

[19] *Id*. at 897-98.

[20] *See e.g.*, *Id*. at 898.

prior to the accident, the Plaintiff was on her property, located on the westbound side of Westville Road, waiting for the bus. The parties also agree, that when the bus arrived, both the entrance to it and the bus itself were on the eastbound side of Westville Road. Under the circumstances, the only logical way for the Plaintiff to enter the bus would be for her to cross Westville Road. Indeed, that is precisely what the Plaintiff was doing– crossing Westville Road, entering the bus– when she was struck by Anderson's vehicle.

This criteria for occupancy references a **reasonable** geographic perimeter. Evaluation of what is reasonable must contemplate, to a certain extent, the nature of the vehicle and the activity at issue. Here, the evaluation as to what is a reasonable geographic perimeter of a school bus hinges on several operative facts. Where a student is crossing a two-lane road, at the express direction of a bus driver speaking from an intercom system from within the bus, with stop lamps activated, and a stop paddle extended, that student is in the process of "entering" the bus. Because "entering" contemplates a reasonable geographical perimeter pursuant to the *Fisher* test, the Court finds that the Plaintiff was an "occupant" within the meaning of section 2118(a)(2)c.

The Defendant argues that the Plaintiff was not "entering" the bus because she was not actually engaged in the process of getting into the vehicle. According to the

9

Defendant, the "entrance to the bus was on the other side of the street, and [the Plaintiff] would have to complete crossing the street to begin entering." In support, the defendant cites a number of cases, all of which are distinguishable from the present case in either law or fact. Some of the case were decided prior to *Fisher* and the articulation of its test, and others deal with whether the claimant was within reach of the vehicle, and did not address whether the claimant was entering or exiting the vehicle.

For instance, the defendant cites *Oggenfuss v. Big Valley Associates*, where this Court held that an injured plaintiff was not an occupant when she slipped and fell within two feet of her car while returning from an automatic teller machine because there was an insufficient nexus between the vehicle and the plaintiff's activity.[21] However, *Oggenfuss* was one of the cases referenced and implicitly rejected in *Fisher*.[22] Under the reasonable geographic perimeter prong– which did not yet exist– the outcome in *Oggenfuss* would have been different because the plaintiff was clearly within reach of her vehicle when she slipped and injured herself.

Additionally, the Defendant's position regarding the scope of what is considered

---

[21] 1996 WL 453319, at *1 (Del. Super. May 3, 1996).

[22] *See Fisher*, 692 A.2d at 897-898 (providing that "[w]e realize that application of this holding to prior Superior Court cases could have caused different results to have been obtained in one or more of those cases... To the extent the analysis in any of those cases is inconsistent with the holding announced herein, we decline to approve such case or cases."

"to enter" is incorrect in this context. As mentioned above, the reasonable geographical perimeter criteria include a claimant that is either (1) in, (2) entering, (3) exiting, (4) touching, or (5) within reach of the covered vehicle. Accordingly, being "in" the bus would have been the only criteria which would require the Plaintiff to "complete crossing the street." "Entering" is an individually listed criteria. While it is impossible, for instance, to be "in" a vehicle without "touching" it, it is possible to be considered "entering" a vehicle prior to coming "within reach of", or "touching" it. By necessity, entering a vehicle for purposes of this definition of occupancy contemplates a person being outside that vehicle. How far outside that vehicle the act of entering extends to is controlled in this case by the specific facts of a school bus's loading and unloading procedures.

Regulatory authority, effective at the time of the incident at issue, and cited by Plaintiff is also instructive as to the relationship between a student boarding a school bus and the vehicle itself. Namely, *14 Del. Admin. Code.* §1105, Rule 8.0, deals with the relationship of students to their school buses. Namely, Regulation 8.0 is entitled "Pupil Conduct **on** School Buses".[23] Within that regulation, are various provisions related to the "boarding" of students. Those same regulations prohibit students from

---

[23] *14 Del. Admin. Code* §1105, Reg. 8.0 (Ex. "A' to Plaintiff's Answering Brief) (emphasis added).

crossing the road until "being told to begin crossing by the driver…"[24] The regulations further provide that a student shall, only at such direction, cross the roadway in the same manner as Plaintiff was instructed to cross in the case at hand. Including the street-crossing process within the definition of boarding a bus is supportive of a finding that Plaintiff was entering a bus at the time of the injury. Furthermore, regulation 9.0 includes "Procedures for **Operating** Buses." [25] Withing these procedures, Rule 9.8 provides in relevant part

> [p]upils who must cross the road **to board the bus** … shall cross at a distance in front of the bus beyond the crossing control arms so as be clearly seen by the driver and only upon an audible clearance by the driver. The driver shall signal pupils to cross by instructions through the external speaker of the public address system.

Boarding a school bus is synonymous with a student's entering such a vehicle. Accordingly, in evaluating what is a "reasonable" geographic perimeter, in the circumstances of this case, the student was within such a perimeter.

Only one of the *Fisher* criteria are necessary for a person to be considered an "occupant" for purposes of PIP coverage. Nevertheless, independently, the second *Fisher* criteria is also satisfied in this case. Under the unique circumstances involved in a student boarding a school bus at the direction of a driver sitting inside the bus,

---

[24] Reg. 8.1.13.

[25] *14 Del. Admin. Code* §1105, Reg.9.0 (emphasis added).

the boarding function is also a "task related to the operation of the vehicle."

The Supreme Court in *Fisher* was careful to "distinguish between job related tasks for which one's vehicle is an integral tool and tasks directly related to the *operation* of one's vehicle." [26] The analysis of such matters is highly reliant upon the individual facts of a given case. Clearly, the student injured in the accident at issue was not engaged in a job-related task. Rather, she was in the process of being transported to school. A school bus's sole task is to transport its pupils to and from school. A student, actively engaged in this process, is performing a task "inextricably related to the operation" of the school bus.[27] Accordingly, under either *Fisher* criteria, the student qualifies as an occupant for purposes of PIP coverage.

## C.  Requirement That the Claimant Be Injured in an Accident Involving a Motor Vehicle

Next, to assess PIP coverage for this incident, the Court must also analyze the claim pursuant to the criteria set forth in *Kelty v. State Farm Mut. Auto. Ins. Co.* to determine if the claimant was injured in an accident involving a motor vehicle.[28] To

---

[26] *Fisher*, 692 A.2d at 897-898.

[27] *See Id.* at 897 (quoting *Messick v. Reliance Ins. Co.*, 1995 WL 1946624, at *3 (Del. Super, Aug. 17, 1995), 995 WL 465 181, (Del. Super. July 26, 1995) (where the Supreme Court cited approvingly the Superior Court's use of this standard, while declining to revisit that case and other cases' results).

[28]  73 A.3d 926 (Del. 2013).

do so, "[t]he Court must analyze: (1) whether the vehicle was an 'active accessory' in causing the injury; and (2) whether there was an act of independent significance that broke the causal link between the use of the vehicle and the injuries inflicted."[29] The Court defined "active accessory" as "something less than proximate cause in the tort sense and something more than the vehicle being the mere situs of the injury."[30]

The active accessory prong is intended to exclude situations such as those at issue in *Campbell v. State Farm Mut. Auto. Ins. Co.*[31] In that case, an individual sat in a vehicle while another individual accidentally shot him.[32] In that case, the vehicle happened to be the physical location of the plaintiff at the time he was injured and "had a negligible impact on the events that caused the respective plaintiff's injuries."[33]

In the present case however, the bus clearly had an **impact on the events** that caused the Plaintiff's injuries. The Plaintiff was safely on her property before being injured. As the bus approached the Plaintiff's driveway, the driver activated the amber lights and slowed to a stop at which point the red lights activated and the stop sign

---

[29] *Friel*, 2014 WL 1813293, at * 2 (internal quotations omitted).

[30] *Kelty*,73 A.3d at 932 (quoting *Nationwide Gen. Ins. Co. v. Royal*, 700 A.2d 130, 132 (Del. 1997)).

[31] 12 A.3d 1137, 1139 (Del. 2011).

[32] *Id*.

[33] *Kelty*,73 A.3d at 933.

extended. The purpose of the lights and stop sign was to halt all traffic and facilitate safe passage across the street for the Plaintiff. Additionally, the driver used the bus's loudspeaker to give instructions to the plaintiff to cross the street at the time she crossed. Without the bus's presence or the instruction by the driver sitting inside the bus, the plaintiff would not have entered onto Westville Road at the time of the accident. Furthermore, the precise manner of Plaintiff's boarding, the directive by a driver seated inside the bus for the student to cross, and the aforementioned regulations including the detailed process for boarding, supports this nexus. Certainly, the bus's impact on the circumstances of injury meet a but-for threshold. But-for the presence of the bus, this injury would not have happened. Candidly, the bus's impact on the matter meets the standard (in a tort sense) for proximate cause, which exceeds the necessary nexus for coverage. Consequently, the bus was an active accessory to the Plaintiff's injuries.

Finally, there was no act of independent significance that broke the causal link between use of the vehicle and the injuries inflicted. Defendant argues that (1) the alleged negligence of the other driver, and (2) the alleged comparative negligence of the Plaintiff, are superceding acts which break the causal link. Both, however, are allegations regarding the negligence of another.

As noted in *Kelty*, intentional or criminal acts can break the causal link.[34] The superceding nature of the conduct in such situations hinges on the lack of forseeability of that conduct. A motorist striking a child exiting or boarding a bus, however, is a foreseeable risk of such activity. If the Court were to adopt a standard that excluded PIP coverage where there was a **negligent** tortfeasor, it would eviscerate PIP coverage in many instances. On the other hand, if a child in the process of boarding a bus were injured by an intentional criminal act of a third party, such an intentional criminal act would be of a superceding nature sufficient to break the causal link between the vehicle and the injuries inflicted. Defendant's proferred standard, however, would provide for no PIP coverage in any circumstances where there was a negligent third-party tortfeasor. That is clearly contrary to the purpose of Delaware's mandated PIP coverage. Here, these two alleged cases of negligent conduct, intervening **though not superceding** under the circumstances of this case, do not rise to a level that result in a denial of PIP coverage.

## V. CONCLUSION

Here, the Plaintiff was an "occupant" of the bus within the meaning of 21 *Del. C.* § 2118(a)(2)c. In addition, the circumstances surrounding her injury qualify as "an accident involving such vehicle." Accordingly, the Defendant's Motion for Summary

---

[34] *Id.*

Judgment is **DENIED.**


IT IS SO ORDERED.

      /s/ Jeffrey J Clark            

Judge
