**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| JAMES T. LOOS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No.: N22C-07-047 FWW |
| | ) | |
| DELVERNIE T. JACKSON and | ) | |
| ARROW LEASING CORP. d/b/a | ) | |
| ARROW SANITARY SERVICE, | ) | |
| | ) | |
| Defendants. | ) | |

Submitted: August 21, 2024
Decided: September 24, 2024

*Upon Delvernie T. Jackson's Motion for Partial Summary Judgment Regarding Plaintiff's Claim for Punitive Damages,*
**GRANTED.**

*Upon Arrow Leasing Corp.'s d/b/a Arrow Sanitary Service Motion for Partial Summary Judgment Regarding Plaintiff's Claim for Punitive Damages,*
**GRANTED.**

## ORDER

Gary S. Nitsche, Esquire, Caroline A. Kaminski, Esquire, NITSCHE & FREDRICKS, LLC, 305 N. Union Street, 2nd Floor, Wilmington, DE 19805, Attorneys for Plaintiff James T. Loos.

Kevin J. Connors, Esquire, MARSHALL DENNEHY, P.C., 100 N. Orange Street, Ste. 600, P.O. Box 8888, Wilmington, DE 19899, Attorney for Defendants Delvernie T. Jackson and Arrow Leasing Corp. d/b/a Arrow Sanitary Service.

**WHARTON, J.**

This 24th day of September 2024, upon consideration of the Motions for Partial Summary Judgment of Defendants Delvernie T. Jackson ("Jackson")[1] and Arrow Leasing Corp. d/b/a Arrow Sanitary Service ("Arrow")[2] (collectively with Jackson, "Defendants"), the Response in Opposition of Plaintiff James T. Loos ("Loos"),[3] Defendants' Replies,[4] and the record in this case, it appears to the Court that:

1.     Loos claims that on or about May 24, 2022, he was operating his motorcycle in the right lane of Delaware Route 1 while riding northbound near the Delaware Route 299 exit.[5]  Meanwhile, Jackson was operating a pickup truck for Arrow that was pulling a flatbed trailer with sixteen portable toilets.[6]  Jackson is alleged to have maneuvered the pickup truck and trailer from the right lane to the left lane while he attempted to pass Loos' motorcycle.[7]  During the lane change, one of the portable toilets fell off of the trailer and into Loos' lane of travel.[8]  Loos claims that portable toilet then struck the motorcycle, causing him to lose control and sustain severe injuries.[9]

---

[1] D.I. 40
[2] D.I. 39.
[3] D.I. 43.
[4] D.I. 51; D.I. 52.
[5] Am. Compl. ¶ 4, D.I. 4.
[6] Loos' Resp. at 1-2, D.I. 43.
[7] *Id*. at 2.
[8] *Id*.
[9] *Id.*

2.  Loos brings this action against Defendants, jointly and severally.[10] Loos demands, in part, punitive damages from Defendants.[11]  On July 15, 2024, Jackson and Arrow moved separately for partial summary judgment regarding Loos' claim for punitive damages.[12]  Loos responded in opposition to both motions on August 5, 2024.[13]  Jackson and Arrow each replied on August 21, 2024.[14]

3.  Jackson argues that "[t]he record to date does not support a claim that Mr. Jackson's conduct was 'outrageous' because of an 'evil motive' or was 'recklessly indifferent to the rights of others[.]'"[15]  Jackson points out that he had 53 years of experience with Arrow.[16]  In his deposition, he testified in detail as to how the portable toilets were loaded onto and secured in the trailer he was using on the day of the accident.[17]  He claims he never had a problem towing the trailer, and both he and Arrow's owner, Albert Sammons ("Sammons"), walked around the trailer to ensure the portable toilets were secure before departing Dover Air Force Base.[18]

---

[10] Am. Compl. at 4, D.I. 4.
[11] *Id.*
[12] Jackson's Mot. for Part. Summ. J., D.I. 40; Arrow's Mot. for Part. Summ. J, D.I. 39.
[13] Loos' Resp., D.I. 43.
[14] Jackson's Reply, D.I. 51; Arrow's Reply, D.I. 52.
[15] Jackson's Mot. for Part. Summ. J. ¶ 8, D.I. 40.
[16] *Id.*
[17] *Id*.
[18] *Id*.

After the incident, neither he nor Sammons could determine the specific cause of the portable toilet coming off the trailer.[19]

4. Moving in tandem with Jackson for partial summary judgment, Arrow argues that there are no facts or conduct alleged in Loos' Amended Complaint nor any evidence that: (1) Arrow authorized the doing and manner of Jackson's operation of his vehicle at the time of the incident; (2) Arrow was *reckless* in training, supervising, screening and entrusting a vehicle to Jackson; (3) Jackson was employed in a managerial capacity and was acting in the scope of that employment during the time of the incident; or (4) Arrow or any of its managerial agents ratified or approved of the manner of operation of Jackson's vehicle at the time of the incident.[20] Arrow summarizes that "there is no evidence of record that Arrow acted recklessly, outrageously, willfully, or wantonly in training, supervising, screening, or entrusting its vehicle to its employee, [Mr.] Jackson."[21]

5. Loos responds that "[s]ummary judgment should be denied because there is a genuine issue as to whether the precise harm which eventuated … was reasonably apparent but consciously ignored by Defendants, and therefore, the issue of whether Plaintiff is entitled to punitive damages is a question of fact for the jury

---

[19] *Id.*

[20] Arrow's Mot. for Part. Summ. J. ¶ 12, D.I. 39.

[21] *Id.* ¶ 14.

to resolve."[22]   First, Loos contends that viewing the evidence in the light most favorable to Loos, a reasonable jury could conclude that Jackson acted with reckless indifference to the safety of others.[23]   Loos argues that "there is evidence that a reasonable jury could infer that Defendant Jackson knew it was foreseeable that a [portable toilet] secured only from the bottom on a trailer with no guard rails nor other apparatuses around it while traveling approximately 65 mph on the highway could dislodge and harm another motorist."[24]   Jackson writes that a reasonable jury could conclude that: (1) Jackson was aware that the manner in which he loaded the portable toilets could cause them to fall off of the trailer while in transport since this had occurred on a prior occasion;[25] (2) it was foreseeable to Jackson that a portable toilet falling off of the trailer could cause harm to other motorists on the roadway;[26] and (3) Jackson consciously ignored this foreseeable risk of harm when he loaded the portable toilets in such a way prior to traveling on an interstate in windy conditions with other motorists present.[27]

6.      Loos concludes that viewing the evidence in the light most favorable to Loos, a reasonable jury could find that Arrow consciously disregarded an apparent

---

[22] Loos' Resp. at 4-5, D.I. 43.
[23] *Id*. at 5.
[24] *Id.*
[25] *Id*. at 6.
[26] *Id.*
[27] *Id.*

risk of harm to others.[28]  Loos argues that there is evidence for a reasonable jury to

infer that Arrow knew that an improperly secured portable toilet transported on the

interstate exposed motorists to foreseeable risk of harm that could result in serious

injuries or death.[29]  Loos argues that a reasonable jury could conclude: (1)  Sammons

knew the speed and highway conditions during which Jackson would be transporting

the portable toilets, as he directed Jackson to follow his vehicle on the interstate;[30]

(2) Sammons knew the combination of such conditions and the manner in which the

portable toilets were loaded could cause a foreseeable risk of harm to others on the

roadway;[31] (3) Arrow consciously disregarded such risk when it permitted Jackson

to tow the trailer with sixteen portable toilets – which were only attached from the

bottom and were without any additional straps or safeguards to prevent it from

dislodging and exposing other motorists to a dangerous and apparent risk of harm

presented by such falling objects;[32] (4) Arrow was recklessly indifferent in training

its employees, including Jackson, on how to safely load and secure the portable

toilets given the nature of its business;[33] and (5) the significant risk of harm posed

---

[28] *Id*. at 7.
[29] *Id.*
[30] *Id*.
[31] *Id*. at 7-8.
[32] *Id*. at 8.
[33] *Id*.

by a portable toilet falling off a trailer when it is not properly loaded and secured was foreseeable and consciously disregarded by Arrow.[34]

7. Jackson replies that Loos has not established a relationship between the conduct Loos asserts supports his claim for punitive damages and his injury.[35] Jackson states that summary judgment is appropriate because the evidence does not permit a reasonable inference that Jackson's conduct was sufficiently reprehensible to warrant the imposition of punitive damages.[36] He contends that for Loos to recover punitive damages, Loos must establish through evidence that Jackson's conduct was wanton, willful, or recklessly indifferent to the rights of others, such that the probability of the resulting harm was "reasonably apparent but consciously ignored."[37] While Loos correctly references the law, according to Jackson, he misapplies it.[38] Additionally, Jackson argues that this accident and the prior accident Loos references are distinguishable, and that Jackson carefully and properly loaded and secured the portable toilets.[39]

8. Arrow replies that Loos has not offered supporting evidence that Arrow authorized the manner in which the toilets were loaded and secured on the trailer or

---

[34] *Id.*
[35] Jackson's Reply ¶ 1, D.I. 51.
[36] *Id.*
[37] *Id.* ¶ 2.
[38] *Id.*
[39] *Id.* ¶ 4-6.

the manner in which Jackson operated the vehicle at the time of the accident.[40]

Arrow contends that the record is devoid of any facts, conduct, or evidence that it was reckless in training, supervising, screening, or entrusting a vehicle to Jackson.[41] Further, Loos fails to prove that Jackson was employed in a managerial capacity acting in the scope of that capacity when the accident occurred.[42] Finally, nothing in the record suggests that Arrow or any of its managing agents ratified or approved of the manner of operation of Jackson's vehicle when the accident occurred, and there is evidence to the contrary.[43]

9. Superior Court Civil Rule 56(c) provides that summary judgment is appropriate where there is "no genuine issue as to any material fact ... and the moving party is entitled to a judgment as a matter of law."[44] The moving party initially bears the burden of establishing both of these elements; if there is such a showing, the burden shifts to the non-moving party to show that there are material issues of fact for resolution by the ultimate fact-finder.[45] The Court considers the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the

---

[40] Arrow's Reply ¶ 7, D.I. 52.
[41] *Id.*
[42] *Id.*
[43] *Id.*
[44] Super. Ct. Civ. R. 56(c); *Buckley v. State Farm Mut. Auto. Ins. Co.*, 139 A.3d 845, 847 (Del. Super. Ct. 2015), *aff'd*, 140 A.3d 431 (Del. 2016) (quoting *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979)).
[45] *Sizemore*, 405 A.2d at 681.

8

affidavits, if any" in determining whether to grant summary judgment.[46] Summary judgment will be appropriate only when, upon viewing all of the evidence in the light most favorable to the non-moving party, the Court finds that there is no genuine issue of material fact.[47] When material facts are in dispute, or "it seems desirable to inquire more thoroughly into facts to clarify the application of the law to the circumstances, summary judgment will not be appropriate."[48] However, when the facts permit a reasonable person to draw but one inference, the question becomes one for decision as a matter of law.[49]

10. Punitive damages do not seek to make the plaintiff whole but rather aim to punish and deter wrongdoing.[50] Accordingly, punitive damages are not available for mere negligence.[51] Instead, the defendant's conduct must demonstrate "an intent, or conscious decision, to disregard the rights of others."[52] For a defendant's conduct to be found willful or wanton, thereby warranting punitive damages, the conduct must reflect a "conscious indifference."[53] In cases where a plaintiff argues the

---

[46] *Brzoska v. Olson*, 668 A.2d 1355, 1364 (Del. 1995).
[47] Super. Ct. Civ. R. 56(c); *Merrill v. Crothall-Am., Inc.*, 606 A.2d 96, 99-100 (Del. 1992).
[48] *Ebersole v. Lowengrub*, 180 A.2d 467, 468-69 (Del. 1962) (*citing Knapp v. Kinsey*, 249 F.2d 797 (6th Cir. 1957)).
[49] *Wooten v. Kiger*, 226 A.2d 238, 239 (Del. 1967).
[50] *Jardel*, 523 A.2d at 529 (citing Restatement (Second) of Torts § 908 (1979)).
[51] *Id*.
[52] *Riegal v. Aastad*, 272 A.2d 715, 717 (Del. Super. 1970).
[53] *Cloroben Chemical Corp. v. Comegys*, 464 A.2d 887, 891 (Del. Super. 1983) (quoting *Eustice v. Rupert*, 460 A.2d 507, 509 (Del. 1983)).

defendant's negligence is based on an error of judgment, the plaintiff seeking punitive damages must show that "the precise harm which eventuated [was] reasonably apparent but consciously ignored."[54]

11.     While the question of punitive damages ordinarily is one for the trier of fact, summary judgment is appropriate if the evidence permits no reasonable inference that defendant's conduct was sufficiently reprehensible to warrant the imposition of punitive damages.[55]

12.     As to Arrow, Delaware courts consistently look to the Restatement (Second) of Torts § 909 (1979) to determine whether a jury may award punitive damages against an employer for the act of an employee.[56]    The Restatement (Second) of Torts provides that:

> [p]unitive damages can properly be awarded against a master or other principal because of an act by agent if, but only if:
>
> (a) The principal or a managerial agent authorized the doing and the manner of the act, or
> (b) The agent was unfit and the principal or a managerial agent was reckless in employing or retaining him, or
> (c) The agent was employed in a managerial capacity and was acting the scope of his employment, or
> (d) The principal of a managerial agent of the principal ratified or approved the act.[57]

---

[54] *Jardel*, 523 A.2d at 531.

[55] *Ellis v. Tri State Realty Assocs. LP*, 2015 WL 993438 (Del. Super. Ct. Feb. 27, 2015) (citing *Jardel Co. v. Hughes*, 523 A.2d 518, 527 (Del. 1987)).

[56] *James v. Williams*, 2017 WL 5900953, at *2 (Del. Super. Ct. Nov. 30, 2017) (citations omitted).

[57] Restatement (Second) of Torts § 909 (1979).

10

13.     The Court finds that the facts do not present a genuine issue of material fact on the issue of whether Jackson's conduct was willful and wanton.  Nor do the facts here permit a reasonable inference that his conduct was sufficiently reprehensible to punish and deter him from engaging in wrongful conduct.  Both Loos and Jackson were deposed.  The facts are drawn primarily from Jackson's deposition.  No experts' opinions are in the record.

14.     Jackson testified that he was 71 years old and had been working for Arrow for 53 years.[58]  On the day of the accident, he and Albert Sammons, Arrow's owner, were transporting empty portable toilets from Dover Air Force Base to Arrow's shop on Route 40.[59]  Jackson was hauling a trailer with 16 toilets configured from front to back in eight side by side pairs, while Sammons was transporting 20.[60]  Both Sammons and Jackson loaded the toilets.[61]  Jackson had been using the particular trailer he used on the day of the accident since 2019 and always secured the toilets the same way and never had a problem.[62]  Toilets were secured on that trailer by means of two runners on each toilet.  Jackson explained the toilets' runners are four by four pieces of heavy molded plastic permanently bolted to the walls of

---

[58] Jackson's Mot. for Part. Summ. J., Ex. C, Jackson Tr. at 7:23–8:3, D.I. 40.
[59] *Id.* at 15:18–24; 18:8-16.
[60] *Id.* at 19:3-20:23.
[61] *Id.* at 20:12-15.
[62] *Id.* at 22:18-22; 47:17-23.

11

the toilets.[63]  The runners extend beyond the base of the toilets on each side.[64]  The runners along the outside edges of the trailer are secured by putting metal rods, each having two bolts, over the top of the runners and tightening the rods and runners down along the sides of the trailer with either a hand ratchet or screw gun.[65]  The runners on the other side of each toilet are secured by sliding the runners under a T-bar running down the center of the trailer.[66]

15.    The accident occurred when Jackson was passing Loos on Loos' left at a speed of about 65 miles per hour when one toilet fell of the trailer, injuring Loos.[67]  Prior to the accident Jackson knew that the toilets were "supposed to be fastened down and be secured."[68]  "We always did," he testified.[69]  Prior to leaving Dover Air Force Base, he and Sammons walked around the trailer and pulled on each bar to make sure it was secured.[70]  He emphasized, "I said, I had that load properly secured. I mean we walk and check on it before we leave."[71]  After the accident occurred, Jackson and Sammons tried to figure out how the toilet came off, but were unable to

---

[63] *Id.* at 41:11-42:23.
[64] *See,* Loos' Resp., Ex D
[65] Jackson's Mot. for Part. Summ. J., Ex. C., at 21:10-20; 40:1-3, D.I. 40, *See also,* photographs attached as Ex. D to Loos' Response, D.I. 43.
[66] *Id.* at 40:1-20.
[67] *Id.* at 25:12-29:7;
[68] *Id.* at 38:5-7.
[69] *Id.* at 38:7.
[70] *Id.* at 55:4-10.
[71] *Id.* at 58:12-14.

discover a reason.[72] Jackson surmised that the only explanation he could think for the toilet coming off was that it was windy.[73] Jackson described the weather as being a "pretty decent day except it was windy."[74] Because of the wind, he "[j]ust [made] sure they [the toilets] are strapped down good, that's all. It's all we can do," but, "[w]ind don't really bother us bad."[75] Jackson clarified that "it wasn't windy that day. It was just a gust of wind that went across the bridge where it opened up. It was, you know good before and then we are out in the wide open."[76] In his deposition, Loos testified that as a motorcycle rider he was "pretty in tune with high wind because it obviously affects how you ride. And I don't recall it ever being an issue at all."[77]

16.    Jackson described a prior incident "a few years ago" when a toilet "went off the back end: on a "windy rainy day."[78] No one was injured in that incident, which was the only other time in his 53 years working for Arrow that a toilet fell off of the trailer."[79]

---

[72] *Id.* at 31:16-21; 32:8-10.
[73] *Id.* at 38:16-19.
[74] *Id.* at 24:8-10.
[75] *Id.* at 24:20-25:5.
[76] *Id.* 58:18-22.
[77] Loos' Resp., Ex. A, at 6:7-11, D.I. 43.
[78] Jackson's Mot. for Part. Summ. J., Ex. C. at 29;13-14, D.I. 40..
[79] *Id.* at 29:8-20.

17.     There is no genuine issue of material fact concerning what Jackson did to secure the toilets to the trailer.  On that point,  Jackson's uncontested testimony is that he secured  the toilets in the same manner he has secured them for many years and that prior to leaving Dover Air Force Based both he and Sammons checked to make sure each one was secure.  In no way does that conduct demonstrate the wilfulness and wantonness reflecting a conscious indifference to the possibility that a toilet would detach from the trailer and injure someone necessary for punitive damages.  Nor is it sufficiently reprehensible to warrant the imposition of punitive damages.  It is not reprehensible at all.

18.     The whole of Loos' contention that punitive damages should be in play is based on a single prior incident when a toilet fell off the back of Jackson's trailer from a different position than the toilet here in different weather conditions than existed here.  The Court is not persuaded.  The record does not contain any evidence establishing the actual cause of the toilets falling off the trailer in either situation.  At best there is speculation that wind, rain and/or the combination of wind and rain was a factor.  Such conjecture is insufficient to elevate Jackson's conduct in securing the toilets here to recklessness.

19.     Loos' claim for punitive damages against Arrow is based upon an allegation that Jackson and Sammons were reckless in the manner they secured  the

14

toilets to the trailer Jackson was pulling.[80]  Because the Court finds Jackson's conduct (and inferentially Sammons') was not willful and wanton, nor is there a reasonable inference that the conduct was sufficiently reprehensible to warrant the imposition of punitive damages, Arrow cannot be assessed punitive damages either. The Court grants Arrow partial summary judgment on the issue of punitive damages.

**THEREFORE**,  the Motions for Partial Summary Judgment of Defendant Delvernie T. Jackson and Defendant Arrow Leasing Corp. d/b/a Arrow Sanitary Service are **GRANTED**.

**IT IS SO ORDERED**.

/s/ *Ferris W. Wharton*
Ferris W. Wharton, J.

---

[80] Amend. Compl. ¶¶ 8-10, D.I. 4.