# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| BVFL I FI LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No.: N24L-04-016 FWW |
| | ) | |
| OFFICE PARTNERS XIII IRON | ) | |
| HILL LLC and NAVIENT | ) | |
| SOLUTIONS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

Submitted: November 13, 2024
Decided: January 31, 2025

*Upon Plaintiff BVFL I FI LLC's Motion for Summary Judgment,*
**GRANTED in part and DENIED in part.**

## <u>ORDER</u>

Christina B. Vavala, Esquire, Katherine Devanney, Esquire, POLSINELLI PC, 222 Delaware Ave., Suite 1101, Wilmington, DE 19801; Bradley R. Gardner, Esquire (*pro hac vice*), Abigail E. Williams, Esquire (*pro hac vice*), POLSINELLI PC, 900 W. 48th Place, Suite 900, Kansas City, MO 64112; Deionna E. Ferguson, Esquire (*pro hac vice*), POLSINELLI PC, 7676 Forsyth Blvd., Suite 800, St. Louis, MO 63105; Attorneys for Plaintiff BVFL I FI LLC.

Evan Rassman, Esquire, COHEN SEGLIAS PALLAS GREENHALL & FURMAN, PC, 500 Delaware Ave., Suite 730, Wilmington, DE 19801; Jonathan A. Cass, Esquire (*pro hac vice*), COHEN SEGLIAS PALLAS GREENHALL & FURMAN, PC, 1600 Market St., 32nd Floor, Philadelphia, PA 19103; Attorneys for Defendant Office Partners XIII Iron Hill LLC.

R. Karl Hill, Esquire, James S. Green, Jr., Esquire, SEITZ, VAN OGTROP & GREEN, P.A., 222 Delaware Ave., Suite 1500, Wilmington, DE 19801; Attorneys for Navient Solutions, LLC.

**WHARTON, J.**

This 31st day of January, 2025, upon consideration of Plaintiff BVFL I FI LLC's ("Lender") Motion for Summary Judgment,[1] Defendant Navient Solutions LLC's ("Navient") Response,[2] Defendant Office Partners XIII Iron Hill LLC's ("Borrower") Response,[3] Lender's Reply to Navient,[4] Lender's Reply to Borrower,[5] oral argument, and the record in this matter, it appears to the Court that:

1.      On October 17, 2017, Borrower entered into a commercial real estate mortgage loan with Lender (original and as modified, "Loan") pursuant to the terms and conditions of the Loan Agreement.[6]  The Loan is evidenced by the Promissory Note (original and as modified, "Note"), which was first modified by Allonge #1 to Promissory Note, and then by the Amended, Restated and Consolidated Promissory Note.[7]

2.      The Loan is secured by the Mortgage, Assignment of Leases and Rents, Security Agreement, and Fixture Filing ("Mortgage").[8]  Pursuant to the terms of the Mortgage, Borrower granted Lender a first-priority lien and security interest in real property located at 700, 750, 800 & 1000 Prides Crossing, Newark, Delaware,

---

[1] Lender's Mot. for Summ. J., D.I. 21.
[2] Navient's Resp., D.I. 25.
[3] Borrower's Resp., D.I. 27.
[4] Lender's Reply to Navient, D.I. 28
[5] Lender's Reply to Borrower, D.I. 28.
[6] Lender's Mot. for Summ. J. at 1-2, D.I. 21.
[7] *Id*. at 2.
[8] *Id*.

together with all improvements and other personal property used at, or in connection with, that real property ("Property").[9]

3. As additional security for the amounts due and owing under the Note, Borrower executed an Assignment of Leases and Rents ("ALR").[10] Also, in connection with Borrower's execution of the Note, Christopher Buccini, Robert Buccini, and David Pollin executed a Guaranty of Recourse Obligations ("GRO").[11] The Loan Agreement, Note, Mortgage, ALR, and GRO are collectively referred to herein as the "Loan Documents."

4. Lender moves for summary judgment.[12] Both Navient and Borrower responded in opposition.[13] Lender replied separately to each defendant.[14] The Court held oral argument on November 13, 2024.

5. In moving for summary judgment, Lender contends that Borrower breached the Note and other Loan Documents by: (i) incurring unpermitted indebtedness without Lender's prior written consent; (ii) permitting a lien to exist on the Property without Lender's prior written consent; (iii) failing to pay the

---

[9] *Id.* at 2-3.
[10] *Id.* at 3.
[11] *Id.*
[12] Lender's Mot. for Summ. J., D.I. 21.
[13] Navient's Resp., D.I. 25; Borrower's Resp., D.I. 27.
[14] Lender's Reply to Navient, D.I. 28; Lender's Reply to Borrower, D.I. 28.

accelerated indebtedness due and owing under the Note, as and when required; and (iv) failing to pay the entire balance due and owing under the Note.[15]

6.      In its Opening Brief, Lender points out the specific amounts allegedly due and owing under the Loan Documents ("Indebtedness"),[16] but does so without much information as to the calculation of these amounts.[17] Lender claims it has established its right to summary judgment because: (i) Borrower is in default under the Mortgage and other Loan Documents; (ii) at least $21,980,037.74 is currently due to Lender from Borrower under the terms of the Loan Documents; and (iii) the Loan Documents and Delaware law entitle Lender to foreclose and otherwise exercise its rights and remedies.[18]

7.      Additionally, Lender preemptively addresses Borrower's and Navient's affirmative defenses, arguing they contain speculative, unsupported, and unexplained allegations that cannot prevent entry of summary judgment.[19] As to Borrower's five affirmative defenses, Lender argues that they all fail.[20] Lender contends that Borrower's defense of failure to state a claim for relief fails because

---

[15] Lender's Mot. for Summ. J. at 1, D.I. 21.
[16] *Id.* at 6-7.
[17] The Affidavit of Steve Cho in Support of Plaintiff's Motion for Summary Judgment ("Cho Affidavit") was submitted with the Opening Brief. Paragraph 21 of the Cho Affidavit also points out the same Indebtedness amounts.
[18] Lender's Mot. for Summ. J. at 8-9, D.I. 21.
[19] *Id.* at 9.
[20] *Id.* at 10.

Lender has alleged and established that Borrower is in default under the Mortgage and other Loan Documents, and that over $21,980,037.74 is currently due from Borrower to Lender.[21] Second, Lender argues that Borrower's estoppel defense fails because it did not plead any factual allegations to support this defense.[22] Specifically, Borrower has failed to plead facts under this defense to implicate payment or satisfaction, and it has failed to assert any factual allegations which would give rise to a valid avoidance defense.[23] Third, Lender argues that Borrower's waiver defense fails because "Borrower has failed to identify the right that Lender supposedly relinquished, and Borrower has otherwise failed to plead facts to support a defense of waiver."[24] Specifically, Borrower has not pled facts under its waiver defense to implicate payment or satisfaction, and it has failed to point to any authority to support the proposition that Lender's purported "waiver" would give rise to a valid avoidance defense.[25] Fourth, Lender argues that Borrower's laches defense fails because: (i) Borrower did not assert any facts to suggest that there was an unreasonable delay by Lender in bringing its claim; (ii) Borrower has failed to plead facts implicating payment or satisfaction; and (iii) Borrower has failed to point to any authority to support the proposition that Lender's purported "delay" would

---

[21] *Id*.
[22] *Id*. at 11.
[23] *Id*.
[24] *Id*. at 12.
[25] *Id*.

give rise to a valid avoidance defense.[26]  Fifth, Lender argues that Borrower's inequitable conduct/unclean hands defense fails because it has failed to plead facts to support this defense.[27]  Specifically, Borrower has failed to plead facts implicating payment or satisfaction, and it has failed to point to any authority to support the proposition that Lender's purported "unclean hands" give rise to a valid avoidance defense.[28]

8.  Similarly, Lender contends that Navient's affirmative defenses also fail.[29]  Lender points out that the Delaware Superior Court has already concluded that Navient's interest in the Property is junior to Borrower's interest because of Delaware's clear lien priority rules.[30]  And, Navient is a junior creditor with no standing to challenge the agreements between Lender and Borrower.[31]  Lender argues that Navient's culpable conduct defense fails because it has not stated any facts supporting its allegations that Lender engaged in culpable conduct nor has it presented any evidence that would establish the existence of any culpable conduct on behalf of Lender.[32]  Lender also argues that Navient's other affirmative defense - that there is ongoing discovery in a related case which may impact Lender's rights -

---

[26] *Id*. at 12-13.
[27] *Id*. at 13.
[28] *Id*. at 14.
[29] *Id*.
[30] *Id*.
[31] *Id*.
[32] *Id*. at 15.

fails because it has not stated how and in what manner such discovery will impact Lender's rights in this action.[33] Further, Navient does not explain how the purported discovery will overcome the prior judgment or otherwise impact Lender's right to foreclose its "unquestionably senior Mortgage lien."[34]

9.  Navient opposes Lender's Motion.[35] It contends that the default and attempted foreclosure constitute an improper attempt by Lender to prevent Navient from exercising its rights as a judgment creditor.[36] Navient adds that it should be permitted to conduct discovery before the foreclosure is allowed to proceed so that it may establish those rights and how they impact the foreclosure.[37] Specifically, Navient asserts that Lender's Motion should be denied because Navient is entitled to pursue discovery regarding the relationship between the Buccini Pollin Group/Borrower and Lender.[38] Navient argues that legitimate questions remain concerning: (i) alleged collusion between Lender and the Buccini Pollin Group/Borrower relating to the declaration of default and efforts to avoid Navient's judgment; (ii) the potential diversion of Property assets intended to thwart Navient's efforts to collect on its judgment; (iii) alleged breaches of fiduciary duties owed by

---

[33] *Id*. at 15-16.
[34] *Id*. at 16.
[35] Navient's Resp. at 1, D.I. 25.
[36] *Id*. at 2.
[37] *Id.*
[38] *Id*. at 7.

the Buccini Pollin Group/Borrower to Navient as a creditor; and (iv) which assets will be impacted by the foreclosure proceeding and how such assets are to be distributed as part of any foreclosure.[39]

10.    Navient contends that these issues are not merely speculative or hypothetical.[40] Navient asserts that it has already obtained evidence questioning the timing and legitimacy of Lender's declaration of default and this foreclosure proceeding, given that there appears to be more than sufficient rent income to cover the mortgage payments and other expenses associated with the Property.[41] Navient insists that it has also uncovered evidence, including emails, suggesting that Lender and the Buccini Pollin Group/Borrower have colluded to thwart Navient's collection of its judgment, and further discovery will shed light on these issues.[42] Navient also insists that until discovery is concluded in the companion case, and this case, the Property should not be foreclosed and sold.[43] Lastly, Navient adds that Borrower has filed an answer denying the substantive allegations of Lender's foreclosure complaint, which included allegations of default and the assertion of affirmative defenses.[44] As a result, summary judgment should be precluded.[45]

---

[39] *Id.*
[40] *Id.* at 8.
[41] *Id.*
[42] *Id.*
[43] *Id.*
[44] *Id.*
[45] *Id.*

11.     In its Reply to Navient, Lender primarily adds that no further discovery or arguments concerning Navient's purported interest in the Property can prevent foreclosure of Lender's Mortgage lien.[46] Lender organizes its subsequent arguments in five points. First, Lender contends that it is conclusive that its Mortgage lien has priority over Navient's purported lien under the prior judgment.[47] Second, Lender contends that summary judgment should be entered in its favor because it has made a *prima facie* foreclosure claim against Navient in the affidavits attached to its briefs.[48] Third, Lender contends that no discovery is needed to decide the foreclosure issue.[49] Further, the issues for which Navient seeks discovery – communications between Lender, Borrower, and the Buccini Pollin Group regarding the judgment and handling of rents and expenses – are utterly immaterial to the question of whether Lender's Mortgage lien is senior in priority to Navient's lien under the prior judgment.[50] Additionally, Navient had ample opportunity to conduct discovery in this case, but chose not to do so.[51] And, to the extent that Navient has disputes over discovery, those disputes should be resolved in the separate action where they originated.[52] Fourth, Lender contends that Navient's claims of collusion

---

[46] Lender's Reply to Navient at 1, D.I. 28.
[47] *Id*. at 2.
[48] *Id*. at 3.
[49] *Id*. at 4.
[50] *Id*.
[51] *Id*. at 5.
[52] *Id*.

10

are unsupported.[53] Therefore, entry of summary judgment in Lender's favor cannot be prevented.[54] Further, even if Navient could prove collusion, such allegations would have no bearing on Lender's lien priority or its right to foreclose.[55] Moreover, Navient's claims of collusion fail to meet the standard for defeating a motion for summary judgment as Navient has not presented any actual facts demonstrating a genuine issue for trial.[56] Fifth, Lender contends that collateral estoppel and *res judicata* preclude re-litigation of the priority issue.[57]

12. Borrower also opposes Lender's Motion.[58] Borrower contends there genuine issues of material fact regarding the amount requested by Lender.[59] Next, Borrower adds that: (i) Lender has failed to prove its entitlement to interest and default interest on protective advances because the Loan Documents do not provide for such interest nor has any proof of protective advances been provided; (ii) Lender has calculated the default interest owed using the incorrect default interest rate under the Loan Documents; and (iii) Lender has failed to clearly prove that the stated amount of the Exit Fee is true and correct, as the Loan Documents are ambiguous

---

[53] *Id.*
[54] *Id.*
[55] Id. at 5-6.
[56] *Id*. at 6.
[57] *Id*. at 7-8.
[58] Borrower's Resp. at 1, D.I. 27.
[59] *Id.*

regarding its calculation.[60] Borrower primarily contends that the contract is ambiguous as to the damages, and the calculation of damages, due and owing to Lender pursuant to the Loan Documents.[61] Under this argument, Borrower makes three sub-arguments. First, Borrower contends that Lender's request for the principal amount of $23,535,000.00 and the interest amount of $1,286,580.00, along with several other amounts, is "unclear and unsupported" by the record produced by Lender.[62] Second, Borrower contends that the Loan Documents are ambiguous regarding the calculation of the Exit Fee and Lender has failed to further articulate how they arrived at the amount of $752,334.88.[63] Third, Borrower contends that Lender has failed to show its entitlement to any interest on protective advances in the amount of $7,565.31 and default interest on these protective advances in the amount of $6,304.43.[64]

13. In its Reply to Borrower,[65] Lender reiterates its contention that it had made a *prima facie* foreclosure claim against Borrower and summary judgment

---

[60] *Id*. at 3.
[61] *Id*. at 4.
[62] *Id*. at 7.
[63] *Id*. at 9.
[64] *Id*. at 11.
[65] The Supplemental Affidavit of Steven Cremer in Support of Plaintiff's Motion for Summary Judgment ("Cremer Affidavit") was submitted with Lender's Reply to Borrower. To varying degrees, none of which are comprehensive, the Cremer Affidavit includes some basis for calculating the Indebtedness.

12

should be entered in its favor.[66]  Next, Lender replies that the Loan Documents are unambiguous and make clear the amounts due and owing to Lender, including the Exit Fee and interest on protective advances by Lender.[67]  Here, Lender argues that: (i) the Loan Agreement is unambiguous in that Lender is immediately entitled to the Exit Fee upon acceleration of the Loan;[68] (ii) the property protective advances made by Lender are recoverable under the Loan Documents, with interest, and are properly supported by the evidence presented by Lender;[69] and (iii) 6 *Del. C.* § 2301 does not prevent Lender from collecting interest at the rate set forth in the Loan Documents.[70]

15.    Superior Court Civil Rule 56(c) provides that summary judgment is appropriate if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[71]  The moving party initially bears the burden of demonstrating that the undisputed facts support its claims or defenses.[72]  If the moving party meets its burden, the burden shifts to the non-moving party to show that there are material issues of fact to be resolved by the ultimate

---

[66] Lender's Reply to Borrower at 2, D.I. 28.
[67] *Id*. at 6.
[68] *Id*. at 7.
[69] *Id*. at 8.
[70] *Id*. at 10.
[71] Super. Ct. Civ. R. 56(c); *Buckley v. State Farm Mut. Auto. Ins. Co.*, 139 A.3d 845, 847 (Del. Super. Ct. 2015), *aff'd*, 140 A.3d 431 (Del. 2016) (quoting *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979)).
[72] *Sizemore*, 405 A.2d at 681.

factfinder.[73]   When considering a motion for summary judgment, the Court's function is to examine the record, including "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," in the light most favorable to the non-moving party to determine whether genuine issues of material fact exist "but not to decide such issues."[74]  Summary judgment will only be appropriate if the Court finds there is no genuine issue of material fact.  When material facts are in dispute, or "it seems desirable to inquire more thoroughly into the facts, to clarify the application of the law to the circumstances," summary judgment will not be appropriate."[75]  However, when the facts permit a reasonable person to draw but one inference, the question becomes one for decision as a matter of law.[76]

16.   Before discussing Lender's claims against Borrower, the Court addresses any interest that Navient may have in the outcome of the Court's decision on this Motion.  After reviewing the Opinion in *Navient Solutions, LLC v. BPG Office Partners XIII Iron Hill LLC*,[77] the Court does not agree with Navient that it has lien priority over the Property.  Furthermore, the Court does not see a valid basis

---

[73] *Brzoska v. Olson*, 668 A.2d 1355, 1364 (Del. 1995).
[74] Super. Ct. Civ. R. 56(c); *Merrill v. Crothall-Am., Inc.*, 606 A.2d 96, 99-100 (Del. 1992).
[75] *Ebersole v. Lowengrub*, 180 A.2d 467, 468-69 (Del. 1962) (citing *Knapp v. Kinsey*, 249 F.2d 797 (6th Cir. 1957)).
[76] *Wooten v. Kiger*, 226 A.2d 238, 239 (Del. 1967).
[77] 315 A.3d 1164 (Del. Super. Ct. 2024).

for Navient's request for discovery on the foreclosure issue as it is not relevant to the disposition of the actual issues before the Court. Navient is simply a junior lienholder without rights against Lender, the senior lienholder.[78]

17.     Ultimately, this Motion for Summary Judgment presents the Court with the issue of whether an Event of Default under the Loan Documents occurred, and, if so, what do the Loan Documents require in regard to the calculation of the Indebtedness resulting from the Event of Default. First, on the issue of whether there was an Event of Default under the Loan Documents, the Court finds there were several. It agrees with Lender's application of the facts to the Loan Documents, as restated from Lender's Opening Brief:

> Under Section 5.22 of the Loan Agreement, Borrower is prohibited from directly or indirectly creating, incurring or assuming any indebtedness other than the (i) Debt or (ii) unsecured trade payables incurred in the ordinary course of business relating to the ownership and operation of the Property. Further, pursuant to Section 5.27 of the Loan Agreement, Borrower is prohibited from permitting any Liens to exist on any of the Property without Lender's prior written consent. Under Section 8.1(h) of the Loan Agreement, Borrower's breach of any covenant contained in Sections 5.22 or 5.27 of the Loan Agreement is an immediate Event of Default under the Loan Documents.
>
> On or about May 9, 2023, nearly six years after Lender recorded the Mortgage, the Superior Court of the State of Delaware entered a judgment against Borrower and in

---

[78] The Court acknowledges the difficulty of Navient's position. By seeking redress for its legitimate claim against Borrower, it also triggered Borrower's default under the Loan Documents – one of the bases for this foreclosure action.

15

favor of Navient Solutions, LLC in the amount of $839,034.06 (the "Judgment"). Plaintiff did not approve of or consent to the Judgment. As a result of the Judgment, Borrower has (i) incurred indebtedness other than the Debt or unsecured trade payables without Lender's prior written consent and (ii) permitted a judgment lien to exist on the Property without Lender's prior written consent. The entry of the Judgment against Borrower constitutes an immediate Event of Default under the Loan Documents (the "Judgment Event of Default"). Notably, since the Judgment was entered after the recording of Lender's Mortgage, any lien on the Property created by the Judgment is junior to Lender's Mortgage lien. Following the Judgment Event of Default, on or about September 11, 2023, Lender accelerated the indebtedness owed under the Note and other Loan Documents (the "Notice of Acceleration"). Borrower has not paid the accelerated indebtedness.

Even if the Loan had not been accelerated, pursuant to that certain Seventh Amendment to Loan Agreement dated as of March 16, 2023, Borrower was required to pay the balance of the principal, together with all accrued and unpaid interest thereon, and all other amounts payable under the Note, Loan Agreement, and other Loan Documents on or before December 31, 2023 (the "Maturity Date").

Notwithstanding the acceleration of the Loan, Borrower ultimately failed to repay the entire outstanding principal balance of the Note on or before the Maturity Date, together with interest thereon to the date of repayment and all other amounts due and owing under the Loan Documents. Even if the Loan had not been accelerated, Borrower's failure to pay the entire outstanding indebtedness on or before the Maturity Date constitutes an immediate additional Event of Default under the Loan Documents.[79]

---

[79] Mot. for Summ. J. at 4-6, D.I. 21.

18. While Lender's briefs and associated affidavits do not adequately include the calculations for the amounts that make up the Indebtedness, the Court finds that Lender has sufficiently identified that there is no genuine issue of material fact over the triggering of an Event of Default under the Loan Documents. Therefore, judgment as a matter of law is granted on the issue of whether Borrower is in default. However, as to the Indebtedness resulting from the Event of Default, the Court finds that further inquiry is required as to its proper calculation.

19. Lender's Reply to Borrower and the associated Cremer Affidavit do not adequately point the Court to Lender's calculation method for the separate amounts that make up the Indebtedness. The Court cannot substantiate Lender's calculations for the Indebtedness as both submissions lack detail as to structure, authority from the Loan Documents, and exact calculations. Thus, the Court finds it desirable to inquire more thoroughly into the exact amount of the Indebtedness. The Court encourages the parties to confer in an effort to reach an agreement. Failing that, the Court is prepared to resolve the issue upon appropriate application identifying specific areas of disagreement, with the parties' positions supported by specific calculations based on specific references to the Loan Documents.

**THEREFORE**, BVFL I FI LLC's Motion for Summary Judgment is **GRANTED in part** as to default, but **DENIED in part** as to damages.

**IT IS SO ORDERED**.

/s/ *Ferris W. Wharton*
Ferris W. Wharton, J.