# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

FREEDOM MORTGAGE           )
CORPORATION,               )
                           )
    Plaintiff,             )
                           )  C.A. No. N22L-10-033 FWW
    v.                     )
                           )
VERLYN RAYFIELD,           )
                           )
    Defendant.             )

Submitted: August 4, 2025
Decided: August 25, 2025

*Upon Plaintiff Freedom Mortgage Corporation's Motion for Summary Judgment*
**GRANTED.**

*Upon Defendant Verlyn Rayfield's Motion for Summary Judgment*
**DENIED.**

## <u>ORDER</u>

Janet Z. Charlton, Esquire, Chase N. Miller, Esquire, MCCABE, WEISBERG & CONWAY, LLC, 1407 Foulk Road, Suite 204, Wilmington, DE, 19803, Attorneys for Plaintiff Freedom Mortgage Corporation.

Verlyn Rayfield, 821 W. 32nd Street, Wilmington, DE, 19802, Defendant, *pro se.*

**WHARTON, J.**

This 25th day of August 2025, upon consideration of Freedom Mortgage Corporation's ("Freedom") Motion for Summary Judgment ("Motion"),[1] Defendant Verlyn Rayfield's ("Rayfield" or the "Defendant") Response,[2] Freedom's Reply,[3] and the record in this case, it appears to the Court that:

1.      Freedom brought this mortgage foreclosure action on October 19, 2022.[4]  Freedom alleges that George Rayfield and Verlyn Rayfield executed and delivered to Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Synergy One Lending , Inc., d/b/a Mutual of Omaha Mortgage, a mortgage on the property known as 821 W. 32nd Street, Wilmington, Delaware.[5]  Freedom further alleges that it is the assignee of that mortgage.[6]  George Rayfield died on June 9, 2021, leaving the Defendant as the surviving tenant by the entirety.[7]  Freedom alleges that the Defendant has failed to pay installments on the mortgage and owes Freedom $199,371.96 in principal together with interest and assorted other charges.[8]

2.      There was considerable motion practice early in the litigation, mostly at the initiation of Rayfield, until, at the request of Freedom, the matter was moved

---

[1] Pl.'s Mot. for Summ. J., D.I. 69.
[2] Def.'s Resp., D.I. 71.
[3] Pl.'s Reply, D.I. 72.
[4] Compl., D.I. 1.
[5] *Id.* at ¶ 4.
[6] *Id.*
[7] *Id.* at ¶ 5.
[8] *Id.* at ¶¶ 6-7.

from the active docket to the mortgage foreclosure dormant docket on December 29, 2023.[9]  The request was made because the Veterans Administration, which had guaranteed the loan, had advised loan servicers to "cease initiating, continuing, or completing foreclosures through May 31, 2024.[10]  That same day the Court advised the parties:

> In accordance with Superior Court Directive 2019-4, this notice is to advise you that the above case was removed from the active docket to the Dormant docket today. Twenty-four (24) months from the date of this letter, the action shall be dismissed without further notice unless, prior to the expiration of the twenty-four month period a party files a motion with the originally assigned Judge to extend the period for good cause.[11]

On April 16, 2025, Freedom requested that the action be moved back to the active docket.[12]  On June 26, 2025 Freedom moved for summary judgment.[13]  Rayfield responded on July 18th,[14] and Freedom replied on August 4th.[15]  It does not appear Rayfield ever answered the Complaint despite engaging in considerable motion practice.

---

[9] D.I. 65
[10] *Id.*
[11] D.I. 66.
[12] D.I. 67.
[13] Pl.'s Mot. for Summ. J., D.I. 69.
[14] Def.'s Resp., D.I. 71.
[15] Pl.'s Reply, D.I. 72.

3. The Motion asserts that the permissible defenses to a *scire facias sur* mortgage action under Delaware law are limited to payment, satisfaction, or avoidance of the mortgage.[16] It also asserts that to successfully allege a plea in avoidance a defendant "must relate [the plea] to the mortgage sued upon, *i.e.* to the validity or illegality of the mortgage document."[17] Freedom claims Rayfield did not present any facts indicating a genuine issue of material fact and does not allege any of the permissible affirmative defenses in any of her prior filings.[18] It attaches an affidavit of Kyeshia Renee Wickware, an authorized representative of Freedom, which contains true and correct copies of the mortgage and promissory note, both signed by both Rayfields, and the Account History showing that no payments have been made since April 5, 2022.[19]

4. Quoting the Motion's statement that the matter was moved to the dormant docket for two years, Rayfield's Response expresses an inability to understand how Freedom could have filed the Motion before the expiration of two years.[20] She challenges the validity of the affidavit attached to the Motion,

---

[16] Pl.'s Mot. for Summ. Judg. at 3-4, D.I. 18 (citing *Gordy v. Preform Building Components, Inc.*, 310 A.2d 893 Del. Super. Ct. 1973); *LaSalle National Bank v. Ingram,* 2005 WL 1284049 (Del. Super. Ct. May 19, 2005).

[17] *Id.* at 4 (citing *Windsor I, LLC v. CWCapital Asset Mgmt. LLC*, 2019 WL 4733430 (Del. Super. Ct. Sept,. 27, 2019), *aff'd Windsor I, LLC v. CWCapital Asset Mgmt. LLC,* 238 A.3d 863 (Del. 2020)).

[18] *Id.*

[19] *Id.* at Ex. 1.

[20] Def.'s Resp., at 1-2, D.I. 71.

contending that the affiant does not state that it was made on personal knowledge, or that she was competent to testify to the matters within the affidavit.[21] Rayfield reports that her copies do not appear to be sworn or certified.[22]

5. The main thrust of her opposition, however, questions the validity of the mortgage, note, and "alleged assignments."[23] In this effort, she relies substantially on an affidavit from Joseph R. Esquivel, Jr. ("Esquivel") to claim that the mortgage was not validly transferred.

6. Esquivel states he is a licensed private investigator in the State of Texas and represents that he has personal knowledge and experience in the topic areas related to:

> the securitization of mortgage loans, real property law, Uniform Commercial Code practices, predatory lending practices, assignment and assumption of securitized loans, creation of trusts under deeds of trust, pooling and servicing agreements, issuance of asset backed securities and specifically mortgage-backed securities by special purpose vehicles in which an entity is named as trustee for holders of certificates of mortgage backed securities, the foreclosure process of securitized and non-securitized residential mortgages in both judicial and non-judicial states, and the various forms of foreclosure-related fraud.[24]

---

[21] *Id.* at 4.
[22] The affidavit filed with the Court was sworn to and notarized on July 25, 2025, Pl.'s Mot. for Summ. J., at Ex. 1, D.I. 69.
[23] Def.'s Resp. at 5-10., D.I. 71.
[24] *Id.* at Ex. C, at 1.

Esquivel's Affidavit is made in support of Mortgage Compliance Investigations' "Chain of Title Analysis & Mortgage Fraud Investigation."[25] It concludes:

> In my professional observation, all available evidence that I have examined lacks proof, or even a showing, of any proper transfer of the debt obligation (purportedly evidenced by the note) along with proper transfer of collateral rights in the real property (purportedly evidenced by the Mortgage) regardless of any verbiage inserted into the various assignments. In fact, there is no evidence that the George and Verlyn Rayfield note was properly transferred simultaneously with any purported transfer of the beneficial rights in the George and Verlyn Rayfield Mortgage.[26]

7.    Rayfield also questions the allonge's relationship to the note because the allonge to which the certified copy of the note purportedly relates has no staple marks indicating it was attached to the note.[27] She then argues that because the note was endorsed in blank, only contractual rights were transferred and not enforcement rights.[28] Therefore, Freedom is precluded from foreclosing.[29] Finally, Rayfield moves for summary judgment in her favor.[30]

8.    Freedom replies that none of what Rayfield argues in her response effectively asserts one of the permissible defenses to a mortgage foreclosure.[31]

---

[25] *Id.*
[26] *Id.* at 11.
[27] *Id.* at 6.
[28] *Id.* at 8-10.
[29] *Id.*
[30] *Id.* at 10.
[31] Pl.'s Reply, at 1, D.I. 72.

9.      Superior Court Civil Rule 56(c) provides that summary judgment is appropriate if, when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[32] The moving party initially bears the burden of demonstrating that the undisputed facts support its claims or defenses.[33] If the moving party meets its burden, the burden shifts to the non-moving party to show that there are material issues of fact to be resolved by the ultimate fact-finder.[34] When considering a motion for summary judgment, the Court's function is to examine the record, including "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," in the light most favorable to the non-moving party to determine whether genuine issues of material fact exist "but not to decide such issues."[35] Summary judgment will only be appropriate if the Court finds there is no genuine issue of material fact. When material facts are in dispute, or "it seems desirable to inquire more thoroughly into the facts, to clarify the application of the law to the circumstances," summary judgment will not be appropriate."[36] However, when the

---

[32] Super. Ct. Civ. R. 56(c); *Buckley v. State Farm Mut. Auto. Ins. Co.*, 139 A.3d 845, 847 (Del. Super. Ct. 2015), aff'd, 140 A.3d 431 (Del. 2016) (quoting *Moore v. Sizemore*, 405 A.2d 679, 680 (Del.1979).

[33] *Moore v. Sizemore*, 405 A.2d at 681.

[34] *Brzoska v. Olson*, 668 A.2d 1355, 1364 (Del. 1995).

[35] Super. Ct. Civ. R. 56(c); *Merrill v. Crothall-Am., Inc.*, 606 A.2d 96, 99-100 (Del. 1992).

[36] *Ebersole v. Lowengrub*, 180 A.2d 467, 468-60, (Del. 1962) (citing *Knapp v. Kinsey*, 249 F.2d 797 (6th Cir. 1957)).

facts permit a reasonable person to draw but one inference, the question becomes one for decision as a matter of law.[37]

10.     In a mortgage foreclosure action, the mortgagor must establish why the mortgaged property should not be seized and sold to pay the mortgagor's indebtedness.[38] Defenses in a foreclosure action are limited to payment, satisfaction or a plea in avoidance of the mortgage.[39]

> The phrase "plea in avoidance" has sometimes been described as referring to a plea relating "to the validity or illegality of the mortgage documents," … but a more apposite description of "plea in avoidance" [is that it refers] to the common law plea known as confession and avoidance. "Such plea admits the allegations of the complaint but asserts matter which destroys the effect of the allegations and defeats the plaintiff's right." "[T]he allegation 'in avoidance' must relate to the subject matter of the complaint." Examples of pleas in confession and avoidance are "act of God, assignment of cause of action, conditional liability, discharge, duress, exception or proviso of statute, forfeiture, fraud, illegality of transaction, nonperformance of condition precedent, ratification, unjust enrichment and waiver.[40]

11.     Rayfield does not assert payment or satisfaction.  Her arguments can be summarized as follows: (1) the two-year Veterans Administration moratorium had

---

[37] *Wooten v. Kiger*, 226 A.2d 238, 239 (Del. 1967).
[38] *Mott v. Bank of New York Mellon,* 2019 WL 4879841, at *2 (Del. Oct. 2, 2019) (citing *Moore v. Sizemore*, at 680-81).
[39] *Id.* (citing *Brzoska v. Olson*, at 1364).
[40] *Id. See, Shrewsbury v. Bank of New York Mellon,* 160 A.3d 471, 475 (Del. 2027).

not expired;[41] (2) Freedom's affidavit in support of its motion does not meet the requirements of Rule 56(e);[42] and (3) there are questions concerning the validity of the note, mortgage and allonge.[43]  Regarding the last, she claims: (1) a "Chain of Title Analysis Investigation" reveals that the "Ginnie Mae Trust" owns the note and mortgage;[44] (2) there is no way to establish that the allonge in Freedom's possession is associated with the note:[45] (3) the "alleged allonge" shows the original Lender, Synergy One Lending, Inc., d/b/a Mutual of Omaha Mortgage, has an endorsement payable to the order of "Plaza Home Mortgage, Inc. without Recourse;"[46] (4)  Plaza Home Mortgage, Inc.'s endorsement of the "alleged allonge" in blank was ineffective to convey any enforcement rights because no party was named to receive those rights,[47] (5) a handwriting expert who viewed the note with Rayfield "could not attest to whether or not it was the signatures of Verlyn and George Rayfield,"[48] (6) there is no endorsement to Freedom;[49] and (6) the MERS assignment was ineffective to assign the debt to Freedom.[50]

---

[41] Def.'s Resp., at 1, D.I. 71.
[42] *Id.* 4-5.
[43] *Id.* at 5-10.
[44] *Id.* at 6,10.
[45] *Id.* at 6.
[46] *Id.* at 7.
[47] *Id.* at 8-10.
[48] *Id.* at 8.
[49] *Id.* at 10.
[50] *Id.*

12. Rayfield is mistaken about the Veterans Administration moratorium. She misconstrues a reference in Freedom's Motion for Summary Judgement that the matter "was moved to the dormant docket for two years due to a department of Veterans Affairs moratorium which ultimately expired on December 31, 2024."[51] The Motion cited "V.A. Circular 26-24-12."[52] The letter from Freedom's counsel requesting that the matter be placed on the dormant docket clearly stated, "This is a VA guaranteed loan and by Circular 26-23-25 of the Veterans benefit Administration servicers are advised to cease initiating, continuing or completing foreclosures through May 31, 2024."[53] V.A. Circular 26-24-12, referenced in the Motion, extended the moratorium until December 31, 2024 as Freedom correctly stated.[54] Further, twenty-four months was the maximum time the matter could remain on the dormant docket before it would be dismissed, not the length of time it was required to be on that docket.[55]

13. Rayfield questions the sufficiency of the affidavit offered in support on Freedom's summary judgment motion. She argues that it does not fulfill the requirements of Rule 56(e) because it does not show it was made on personal knowledge or that the affiant was competent to testify to matters within the

---

[51] Pl.'s Mot. for Summ. J. at ¶ 6, D.I. 69.
[52] *Id.* at n.6.
[53] D.I. 65.
[54] V.A. Circular 26-24-12.
[55] D.I. 66.

affidavit.[56]  The affiant is Kyeshia Renee Wickware, "an authorized representative of Freedom Mortgage."[57]  She stated three things in the affidavit: (1) "Attached as Exhibit A is a true and correct copy of the recorded mortgage signed by George Rayfield and Verlyn Rayfield;" (2) Attached as Exhibit B as [sic] a true and correct copy of the promissory note signed by George and Verlyn Rayfield;" and (3) Attached as Exhibit C is a true and correct copy of the Account History."[58]  While the affidavit could have been drafted better, there is no reason to doubt that the affiant was competent to make the affidavit or had personal knowledge of its contents.  But, in any event, none of the contents of the affidavit is seriously controverted.  The mortgage was signed in the presence of and notarized by a member of the Delaware Bar and recorded in the Office of the Recorder of Deeds for New Castle County.[59]  Rayfield does not deny that she executed the mortgage or that Exhibit A to the affidavit is the mortgage she executed.  Similarly, the note was executed in the presence of and notarized by the same member of the Delaware Bar.[60]  Her statement that a handwriting expert "could not attest to whether or not it was the signatures of George Rayfield or Verlyn Rayfield" is insufficient to raise an

---

[56] Def.'s Resp., at 5-6, D.I. 71.
[57] Pl.'s Mot. for Summ. J., at Ex. A, D.I. 69.
[58] *Id.*
[59] *Id.* at Ex. A to Ex. A.
[60] *Id.* at Ex. B to Ex. A.

issue of material fact, especially in the absence of a denial by Rayfield that she signed the note. Rayfield does not need a handwriting expert to know that she signed the note. Finally, Rayfield does not challenge the facts set out in the Account History. Her challenge to the affiant's credentials do not raise a genuine issue of material fact regarding the contents of the Account History and Rayfield has never disputed their accuracy.

14. Rayfield claims that the "Ginnie Mae Trust" is the owner of the original note and mortgage based on a "Chain of Title Analysis Investigation" performed by the Texas private investigator Esquivel.[61] Esquivel claims that the debt was not properly securitized and the debt obligation was not properly transferred.[62] A Westlaw search reveals approximately 41 citations to Esquival. All but one relate to affidavits he submitted in his "expert" capacity supporting, almost exclusively, *pro se* mortgagors in mortgage related actions, either as defendants in foreclosure actions or as plaintiffs alleging improprieties by lenders.[63] In none of the other 40 did any court accept Esquivel's factual or legal conclusions to rule in favor of

---

[61] Def.'s Resp. at 6,10, D.I. 71.

[62] *Id.* at Ex. C.

[63] The lone case in which Esquivel did not submit a purported expert affidavit was his own case where he and Lori Mary Esquivel, as professed "sovereign citizens" outside the jurisdiction of the federal government and therefore immune from paying federal income taxes, brought tax protestor suits against the United States of America, the Internal Revenue Service ("IRS"), two IRS agents, and the U.S. Deputy Assistant Attorney General for Tax Division. *Esquivel v. United States of America, et al.,* 2025 WL 1502565 (W.D. Texas May 13, 2025).

Esquivel's client.  A number of cases either criticized Esquivel directly or noted cautions related to his work.[64]  Other courts have seen fit to note the concerns of

---

[64] *See, Hall v. U.S. Bank National Trust National Association,* 2024 WL 5093133, at n.2 (N.D. Ga. Oct. 22, 2024) ("At present, Plaintiffs proffer an 'affidavit' and 'Chain of Title Analysis & Mortgage Fraud Investigation' from Joseph R. Esquivel, Jr. ('Esquivel'), a private investigator in the State of Texas, in an effort to thwart the August 1 foreclosure ... Plaintiffs rely on Esquivel and argue that the [Defendants] lack standing to foreclose since the Security Deed was assigned into the ... Trust without a transfer of the Note, and that, as a result, the Trust never acquired rights that could be transferred ... Esquivel's theories have been rejected by other judges in this district. *See, e.g., Lakeview Loan Servicing, LLC v. Mobley*, 2022 WL 552740 (N.D. Ga. Jan. 13, 2022) (stating that the Esquivel Affidavit is 'wholly irrelevant' and 'does not do anything but confirm (1) the existence of the assignment and transfers of the security deed ... and (2) that no ownership interest was transferred to the Ginnie Mae REMIC Trust 2012-096'); *Fed. Nat'l Mortg. Ass'n v. Harris*, 2012 WL 13013000, at *2 (N.D. Ga. Aug. 13, 2012).  *Basson v. Fay Servicing, LLC*, No. 2:23-cv-144-RWS-JCF, 2023 WL 6373899, at *4 (N.D. Ga. Aug. 1, 2023) … Esquivel claims here that 'the payment stream (The Debt) was securitized, however it was not done properly.' (Doc. 8-1 at ¶ 20). But a debt's status as securitized or not has no bearing on Plaintiffs' obligations with respect to said debt. *Searcy v. EMC Mortg. Corp.*, No. 1:10-CV-965-WBH (N.D. Ga. Sept. 30, 2010) (Hunt, J.) ('While it may well be that Plaintiff's mortgage was pooled with other loans into a securitized trust that then issued bonds to investors, that fact would not have any effect on Plaintiff's rights and obligations with respect to the mortgage loan, and it certainly would not absolve Plaintiff from having to make loan payments or somehow shield Plaintiff's property from foreclosure.')"); *Reshaw v. Select Portfolio Servicing, Inc.* 2020 WL 13133240, at *15 (N. D. Ga., Nov. 20, 2020) ("Finally, SPS correctly contends that 'Reshaw's legal conclusions about the enforceability of his loan documents and foreclosure "standing" are not based on well-pleaded factual allegations,' but 'are instead based on a "Forensic Chain of Title Securitization Analysis,"' which courts repeatedly have rejected. [Doc. 10 at 6]; see also [Doc. 5 at 3-4 & nn.4-5]. Indeed, Reshaw relies on the audit performed by Esquivel, see, e.g., [Doc. 1-1 at 13 ¶¶ 32-33]; see also [id. at 31-38], but '[s]uch audits have been discredited and are insufficient to rehabilitate an otherwise deficient pleading,' Jorgensen v. Fed. Home Loan Mortg. Corp., Civil Action No. 2:12–CV–00236–RWS, 2013 WL 5200598, at *3 n.7 (N.D. Ga. Sept. 13, 2013) (citations omitted), and courts have determined that they are 'most likely the result of

13

various regulatory agencies.[65]   Here, Esquivel's affidavit reveals that he reviewed

the affidavit of Freedom claiming ownership of the note filed in this case, the note

---

charlatans who prey upon people in economically dire circumstances,' In re Norwood, Bankruptcy No. 10–84443–PWB, 2010 WL 4642447, at *2 (Bankr. N.D. Ga. Oct. 25, 2010). Here, 'Esquivel's affidavit is replete with erroneous statements of law and is wholly unhelpful to a resolution of the case[.]' Fed. Nat'l Mortg. Ass'n v. Harris, CIVIL ACTION NO. 1:11-cv-03207-JOF, 2012 WL 13013000, at *3 n.3 (N.D. Ga. Aug. 13, 2012). Thus, the Court declines to 'consider any facts recited by such a questionable authority.' Demilio v. Citizens Home Loans, Inc., Civil Action No. 3:12-CV-81(CAR), 2013 WL 331211, at *3 (M.D. Ga. Jan. 29, 2013), aff'd, 543 F. App'x 986 (11th Cir. 2013) (per curiam) (unpublished) (footnote omitted));" *Austin v. Caliber Home Loans,* 2019 WL 2291898, at n.3 (N.D. Ga. Feb. 12, 2019) ("On the other hand, Esquivel's affidavit contains specious legal and other opinions masquerading as facts, [*see*, *e.g.*, Doc 1-1 at 17 (¶¶ 14-16), 18 (¶¶ 17, 20), 19 (¶ 23), 20 (¶¶ 25, 27), 21-22 (¶¶ 29-35), which the Court does not consider for purposes of ruling on a motion to dismiss. *Jackson v. BellSouth Telecomms*., 372 F.3d 1250, 1262 (11th Cir. 2004) ('[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal.') (quoting *Oxford Asset Management, Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002)");

[65] *Hakami v. Bank of New York Mellon,* 2015 WL 2097872, at *4, n.2 (D. Nevada 2015) ("A technique used by '[f]raudulent foreclosure "rescue" professionals [who] use half-truths and outright lies to sell services that promise relief to homeowners in distress.' *See*, The Federal Trade Commission, *Forensic Loan Audits,* FTC Consumer Information (Mar. 2010), https://www.consumer.ftc.gov/articles/0130-forensic-loan-audits.  Typically, '[i]n exchange for an upfront fee…forensic loan auditors …backed by forensic attorneys offer to review[] mortgage loan documents to determine whether [the] lender complied with state and federal mortgage lending laws.  The "auditors" [tell client they] can use the audit report to avoid foreclosure, accelerate the loan modification process, reduce [the] loan principal, or even cancel [the] loan."); *Federal National Mortgage Association v. Harris,* 2012 WL 13013000 at n.3 (N.D. Ga. Aug. 13, 2012) ("Plaintiff attaches the affidavit of Joseph R. Esquivel, Jr. who styles himself as a 'forensic loan auditor' and 'securitization analyst.' Mr. Esquivel purports to opine that the foreclosure sale was invalid due to faulty assignment through MERS. He states, for example, that MERS engaged in 'fictitious self-dealing' in the Assignment of Security Deed. Mr. Esquival's affidavit

received from Freedom on May 31, 2023, the note filed with the Court on May 15, 2023,[66] the mortgage, a page from the MERS Procedures Manual and MERS KIT pages, and Pages 1-7 of GNMA Offering Circular Supplement 2019-21.[67] He claims that "On May 25, 2023, the George and Verlyn Rayfield payment stream (The Debt) was identified in the Guaranteed REMIC Pass-Through Securities and MX Securities Ginnie Mae REMIC Trust 2019-121."[68] From there, he mixes loan data purportedly taken from the Ginnie Mae Enterprise Online Portal[69] with a general discussion of the loan securitization process[70] to conclude, after an examination of the relevant documents, that Guaranteed REMIC Pass-Through Securities and MX Securities Ginnie Mae Trust 2019-121 never acquired rights to the George and

---

is replete with the same problems of assertions of legal conclusions without offering any factual support that characterizes Harris's counterclaim. He recasts the same arguments made repeatedly by owners in attempts to forestall foreclosure. Mr. Esquivel's affidavit is replete with erroneous statements of law and is wholly unhelpful to a resolution of the case let alone to be admitted as any expert opinion. It is not a surprise, therefore, that the Counterclaim Defendants note that numerous government officials, including the California Department of Real Estate and the California Attorney General, as well as the United States General Accounting Office, have issued consumer alerts warning already-strapped homeowners not to fall prey to the scam of 'forensic loan auditors' as the latest in 'phony foreclosure-relief services.'").

[66] Presumably, Ex. A, D.I. 43.

[67] Def.' Resp. at Ex. C, at ⁋ 11, D. I. 71.

[68] *Id.* at ⁋ 12.

[69] *Id.* at ⁋ 16.

[70] *Id* at ⁋⁋ 18,20-23.

Verlyn Rayfield note and mortgage and "[i]n fact, there is no evidence that suggests the George and Verlyn Rayfield note was properly transferred simultaneously with any purported transfer of the beneficial rights in the George and Verlyn Rayfield Mortgage."[71] Of course, all of this is obfuscatory nonsense, consistent with Rayfield's history of attempting to "litigate by legerdemain."[72] Since Freedom holds both the mortgage and the note, Esquivel's affidavit fails to raise a genuine issue of material fact.

15. Rayfield's other contentions are likewise without merit and do not raise any genuine issues of material fact. The record reflects that the Rayfields executed and delivered a mortgage and note to MERS as nominee for Synergy One Lending, Inc. d/b/a Mutual of Omaha mortgage for their property at 821 W. 32nd Street in Wilmington and, through various assignments, that Freedom now holds the mortgage, the note, and the allonge, and held them at the time of the foreclosure.[73] Rayfield has no standing to complain about assignments of the note and mortgage since she was neither a party to any assignment, nor a third-party beneficiary.[74] And,

---

[71] *Id.* at ⁋⁋ 39-40.

[72] *Freedom Mortgage Corporation v. Rayfield,* 2023 WL 2134977, at *2 (Del. Super. Ct. Feb. 17, 2023).

[73] *See, Mott v. Bank of new York Mellon,* 2019 WL 4879841, at *3.

[74] *Branch Banking and Trust v. Eid,* 2013 WL 3353846, at *4 (Del. Super. Ct. June 13, 2013).

Freedom may enforce the note, even though there is no payee, because the note is bearer paper enforceable by the possessor.[75]

16. As to Rayfield's summary judgment incorporated in her Response, it is conclusory and relies on arguments the Court has discounted as set out above.

**THEREFORE**, Plaintiff Freedom Mortgage Corporation's Motion for Summary Judgment is **GRANTED**. Defendant Verlyn Rayfield's Motion for Summary Judgment is **DENIED.** The Proposed Order Accompanying Freedom's Motion for Summary Judgment is **ENTERED**.

**IT IS SO ORDERED.**

_/s/ Ferris W. Wharton_
Ferris W. Wharton, J.

---

[75] *Id.*